[Cite as *State v. Dell*, 2022-Ohio-2483.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                        |   | JUDGES:                       |
|------------------------|---|-------------------------------|
| STATE OF OHIO          | : | Hon. W. Scott Gwin, PJ.       |
|                        | : | Hon. William B. Hoffman, J.   |
| Plaintiff-Appellee     | : | Hon. John W. Wise, J.         |
| vs.                    | : |                               |
|                        | : |                               |
|                        | : | Case No. 2021 CA 00079        |
| ERIC DELL, JR.         | : |                               |
|                        | : |                               |
|                        | : | OPINION                       |
| Defendant-Appellant    |   |                               |

CHARACTER OF PROCEEDING:     Criminal appeal from the Licking County
                             Court of Common Pleas, Case No. 2021
                             CR 00263

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      July 19, 2022

APPEARANCES:

For Plaintiff-Appellee               For Defendant-Appellant

WILLIAM C. HAYES                     WILLIAM T. CRAMER
Licking County Prosecutor            470 Olde Worthington Road, Suite 200
BY: J. BRANDON PIGG                  Westerville, OH 43082
Assistant Prosecutor
20 S. Second Street, 4th Floor
Newark OH 43055

*Gwin, P.J.*

{¶1} Defendant-appellant Eric Dell, Jr. ["EDJ"] appeals his conviction and sentence after a negotiated guilty plea in the Licking County Court of Common Pleas.

*Facts and Procedural History*

{¶2} EDJ was charged in a juvenile complaint with aggravated robbery in violation of R.C. 2911.01(A)(1), a first-degree felony; felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony; improperly discharging a firearm at or into a habitation in violation of R.C. 2923.161(A)(1), a second-degree felony; and having a weapon while under disability in violation of R.C. 2923.13(A)(2), a third-degree felony. These charges included a firearm use specification under R.C. 2941.145.

{¶3} On May 5, 2021, the juvenile court held a bind-over probable cause hearing pursuant to Juv.R. 30(A). The following facts were presented during that hearing.

{¶4} At the start of the hearing, the state asked for a preliminary ruling on its notice of intent to rely on hearsay evidence during the hearing. EDJ's counsel objected arguing that denying EDJ the ability to confront and cross-examine the witnesses violated the Due Process clause of the United States and Ohio constitutions. The trial court overruled EDJ's objections, noting that although the Fifth District Court of Appeals had not ruled on this issue; surrounding districts have unanimously concluded that hearsay is admissible in juvenile bind over hearings. PC.T. at 9-12[1]. Later, when the state attempted to elicit hearsay, EDJ's counsel objected and requested a continuing objection.

---

[1] For clarity, the transcript of the probable cause hearing held May 5, 2021 will be referred to as "PC.T."

{¶5} EDJ was born September 26, 2004, and was sixteen years old on February 22, 2021. PC.T. at 18. The guardian ad litem ["GAL"] testified about EDJ's prior juvenile history, which included adjudications for having a weapon while under disability and attempted felonious assault. PC.T. at 126-127. Furthermore, EDJ was on parole at the time of this incident. Id.

{¶6} On February 22, 2021, two 9-1-1 calls were made between 3:07 and 3:08 p.m. regarding a shooting occurring at 2 Pleasant Street, Newark, Ohio. PC.T. at 39-41[2]. Hannah Schaffer who resided at 2 Pleasant Street made one of those 9-1-1 calls. PC.T. at 40-41. Officers responded and found Alexander Nkuitabong ["Alex"] shot on the porch of the residence. Id. at 43.

{¶7} Detective Jarad Harper testified that Ms. Shaffer told police that someone she only knew as "E.J." had shot Alex. When officers spoke to Alex, he also stated someone he knew as "E.J." had shot him. PC.T. at 87. When later shown a photograph of EDJ, Alex positively identified him as the person who shot him. Id.

{¶8} Detective Harper testified that Ms. Shaffer described the shooter fleeing in a blue Impala. In the second call, the caller described two black males, wearing black clothing, and brandishing a gun. The caller said they left in a blue Ford Focus. PC.T. at 46.

{¶9} The detective spoke with Alex when he returned from the hospital. Alex reported that "EJ" came over to see him with an unknown male. They wanted to come inside, but one of Alex's roommates thought it was strange and said no. One of the males

---

[2] Recordings of the two 9-1-1 calls were played for the court and admitted into evidence. State's Exhibits A and B.

asked Alex where he was from and then told him to, "Run your pockets."  PC.T. at 53. Alex saw "EJ" with a gun and was then shot in the leg.  Alex confirmed that "EJ" was EDJ. PC.T. at 52-54.  Alex said the shooter was in Snapchat as "GMG Glizzo," but could not find him.  One of Alex's roommates said he heard of that person and pulled up the account on his phone.  Alex then identified EDJ through the "GMG Glizzo" Snapchat account on his roommate's phone.  PC.T.at 86-87.

{¶10}  The detective testified that a neighbor observed the blue vehicle and two males walking down the road.  PC.T. at 48.  The neighbor asked them if they were looking for someone, but they gave her a name she did not recognize.  She saw them continue down the street toward 2 Pleasant Street and a few moments later, she heard a gunshot. The neighbor had cameras at the front of her house and provided the footage to the police.[3]  The detective reviewed the footage, which show a blue vehicle travelling northbound when two males jump into the rear seats and the car then drives off.  PC.T. at 46-50.

{¶11}  Detectives also found a cellphone at the scene of the shooting.  PC.T. at 43.  The phone was found to belong to Gilbert Frazier, III.  PC.T.  at 44.  The contents of the phone were examined and there were photos of a blue Ford Focus contained therein. Id. at 56.  In those photos, detectives were able to identify the license plate number, which came back being registered to Aiyana Tate.  Id.  Detectives spoke to Ms. Tate and she identified EDJ as one of the persons she was with in the car on February 22, 2021 the day of the shooting.  PC.T. at 58.

---

[3] The security footage was played for the court and admitted into evidence.  State's Exhibit D.

{¶12} EDJ's cellphone was also recovered.  PC.T. at 58.  On the cellphone was the application "Snapchat" and it was signed in under EDJ's account. Detective Harper testified that a feature of Snapchat is that it monitors and keeps records regarding the location of the account holder.   Detective Harper testified that this location data is recorded by the longitudinal and latitudinal location.   Detective Harper testified that the records for EDJ's Snapchat account were obtained and revealed that at 3:04 pm, EDJ was within the margin of error of 120 feet of 2 Pleasant Street.  PC.T. at 63

{¶13} The defense noted that a report from a second police officer lists the suspect as "Elijah Morrow."  Detective Harper said that he did not see that report until later.  The detective did not know who Morrow was and did not recall ever looking into Morrow.  The detective admitted that he probably just dismissed Morrow because the victim identified EDJ.  The detective admitted that Alex did not know EDJ's name; instead, he only knew him as "EJ."  PC.T. at 93-96.

{¶14} Additionally, the defense played a recording from another officer where Alex can be heard saying that he knew "EJ," but did not know the person who shot him.  Alex also told the officer that he was asked where he was from, and when he responded "Orlando," he was shot.  Alex made no mention of being asked to "run his pockets."  Based on this recording, Detective Harper admitted that Alex had changed his story.  PC.T. at 96-97; 117-121.

{¶15} At the conclusion of the probable cause hearing, the juvenile court found that EDJ was sixteen years old at the time of the alleged offenses, and found probable cause to believe that he committed the offenses and used a firearm during the offenses. Because the first count for aggravated robbery with a firearm was a mandatory transfer

offense, EDJ was immediately transferred to the Court of Common Pleas on that count. The remaining discretionary-transfer offenses were scheduled for an amenability hearing.

{¶16} On May 13, 2021, EDJ was indicted for aggravated robbery with a firearm use specification as alleged in the original juvenile complaint.

{¶17} On June 30, 2021, the juvenile court held an amenability hearing on the remaining counts from the juvenile complaint and found that EDJ was not amenable to rehabilitation through the juvenile court system. The court then transferred the remaining counts to the Licking Court of Common Pleas. Despite the transfer order, it does not appear that EDJ was ever indicted or otherwise charged as an adult with these counts.

{¶18} On September 7, 2021, EDJ pled guilty to the aggravated robbery with the firearm use specification. The trial court then imposed a prison term of eight to twelve years on the aggravated robbery, with a consecutive term of three years for the firearm use specification.

*Assignments of Error*

{¶19} EDJ raises two Assignments of Error,

{¶20} "I. APPELLANT'S RIGHT TO DUE PROCESS UNDER THE STATE AND FEDERAL CONSTITUTIONS WERE VIOLATED WHEN THE JUVENILE COURT AT THE BINDOVER HEARING DENIED APPELLANT THE ABILITY TO CONFRONT HIS ACCUSERS.

{¶21} "II. THE JUVENILE COURT ERRED BY FINDING PROBABLE CAUSE THAT APPELLANT COMMITTED AGGRAVATED ROBBERY AND PERSONALLY USED A FIREARM."

I.

{¶22} EDJ claims in his First Assignment of Error that the trial court violated his constitutional right to confront and cross-examine his accusers by allowing the admission of hearsay testimony and not requiring the witnesses to testify at the hearing on the motion to transfer the case to the Licking County Court of Common Pleas.

**Standard of Appellate Review**

{¶23} "'When a court's judgment is based on an erroneous interpretation of the law, an abuse-of-discretion standard is not appropriate. *See Swartzentruber v. Orrville Grace Brethren Church,* 163 Ohio App.3d 96, 2005-Ohio-4264, 836 N.E.2d 619, ¶ 6; *Huntsman v. Aultman Hosp.*, 5th Dist. No. 2006 CA 00331, 2008-Ohio-2554, 2008 WL 2572598, ¶ 50.' *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13." *State v. Fugate,* 117 Ohio St.3d 261, 2008-Ohio-856, 883 N.E.2d 440, ¶6. Because the assignment of error involves the interpretation of the constitutional protection mandated by the Confrontation Clause of the United States and Ohio constitution, which is a question of law, we review the trial court's decision de novo. *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13; *Accord, State v. Pariag,* 137 Ohio St.3d 81, 2013-Ohio-4010, 998 N.E.2d 401, ¶ 9; *Hurt v. Liberty Township, Delaware County, OH,* 5th Dist. Delaware No. 17 CAI 05 0031, 2017-Ohio-7820, ¶ 31.

Issue for appellate review: *Whether fundamental fairness require that juvenile offenders be permitted to confront and cross-examine their accusers whose hearsay statements are presented to provide probable cause for mandatory transfer to adult court.*

**Background**

{¶24} "Ohio's juvenile courts are statutory courts, created by the General Assembly." *In re Z.R.*, 144 Ohio St.3d 380, 2015-Ohio-3306, 44 N.E.2d 239, ¶ 14. "As a statutory court, the juvenile court has limited jurisdiction, and it can exercise only the authority conferred upon it by the General Assembly." Id. It is axiomatic that the juvenile court has exclusive original jurisdiction of children alleged to be delinquent based on commission of an act that would constitute a crime if committed by an adult. *State v. Iacona,* 93 Ohio St.3d 83, 89, 2001-Ohio-1292, 752 N.E.2d 937, *citing* R.C. 2151.23(A)(1) and 2151.02(A); *State v. Golphin*, 81 Ohio St.3d 543, 544–545, 692 N.E.2d 608, 610(1998).

{¶25} In Ohio, a juvenile may be transferred to adult court for criminal prosecution by way of R.C. 2152.12, under which some transfers are mandatory and some are discretionary:

> "Mandatory transfer removes discretion from judges in the transfer
> decision in certain situations." *State v. Hanning*, 89 Ohio St.3d 86, [90], 728
> N.E.2d 1059 (2000); R.C. 2152.12(A). "Discretionary transfer, as its name
> implies, allows judges the discretion to transfer or bind over to adult court
> certain juveniles who do not appear to be amenable to care or rehabilitation
> within the juvenile system or appear to be a threat to public safety." Id.;
> R.C. 2152.12(B).

*State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, ¶10; *State v. Smith,* Slip Op. No. 2019-1813, 2022-Ohio-274(Feb 3, 2022), ¶22. By giving juvenile courts bindover authority, the General Assembly created an exception to the juvenile courts'

exclusive jurisdiction over juvenile offenders.  *Smith,* ¶ 27.  R.C. 2152.10(A) sets forth which juvenile cases are subject to mandatory bindover and provides:

(A) A child who is alleged to be a delinquent child is eligible for mandatory transfer and shall be transferred as provided in section 2152.12 of the Revised Code in any of the following circumstances:

(1) The child is charged with a category one offense and either of the following apply:

(a) The child was sixteen years of age or older at the time of the act charged.

(b) The child was fourteen or fifteen years of age at the time of the act charged and previously was adjudicated a delinquent child for committing an act that is a category one or category two offense and was committed to the legal custody of the department of youth services upon the basis of that adjudication.

(2) The child is charged with a category two offense, other than a violation of section 2905.01 of the Revised Code, the child was sixteen years of age or older at the time of the commission of the act charged, and either or both of the following apply:

(a) The child previously was adjudicated a delinquent child for committing an act that is a category one or a category two offense and was committed to the legal custody of the department of youth services on the basis of that adjudication.

(b) The child is alleged to have had a firearm on or about the child's person or under the child's control while committing the act charged and to have displayed the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of the act charged.

**{¶26}** Aggravated robbery is a category-two offense, R.C. 2152.02(BB)(1), and EDJ was 16 years old at the time the offense was committed. Because he was also charged with a firearm specification, automatic transfer was required. R.C. 2152.10(A)(2)(b). A juvenile court must transfer a juvenile to adult court automatically under these circumstances if "there is probable cause to believe that the child committed the act charged." R.C. 2152.12(A)(1)(b)(ii). *State v. Aalim,* 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶13.

### Requirements for mandatory bind-over to adult court

**{¶27}** In a bindover hearing, "the state must provide credible evidence of every element of an offense to support a finding that probable cause exists to believe that the juvenile committed the offense before ordering mandatory waiver of juvenile court jurisdiction pursuant to R.C. 2151.26(B) [now R.C. 2152.12(A)(1)(a)]. * * * In meeting this standard the state must produce evidence that raises more than a mere suspicion of guilt, but need not provide evidence proving guilt beyond a reasonable doubt." *State v. Iacona*, 93 Ohio St.3d 83, 93, 2001-Ohio-1292, 752 N.E.2d 937. In determining the existence of probable cause, the juvenile court must evaluate the quality of the evidence presented by the state in support of probable cause as well as any evidence presented by the respondent that attacks probable cause. Id., *citing Kent v. United States*, 383 U.S. 541,

86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). Determination of the merits of the competing prosecution and defense theories, both of which [are] credible, ultimately [is] a matter for the factfinder at trial. *Iacona* at 96. *Accord, State v. Culbertson*, 5th Dist. Stark No. 2018CA00183, 2020-Ohio-903, ¶60.

{¶28} The juvenile court's role in a mandatory bind-over proceeding is that of a gatekeeper because it is "charged with evaluating whether sufficient credible evidence exists to warrant going forward with a prosecution on a charge that the legislature has determined triggers a mandatory transfer of jurisdiction to adult court." *In re A.J.S.,* 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶46 *quoting In re A.J.S.*, 173 Ohio App.3d 171, 2007-Ohio-3216, 877 N.E.2d 997, ¶ 22. Credible evidence of every element of an offense to support a finding of probable cause does not have to be unassailable. *Iacona*, 93 Ohio St.3d at 93; 95, 752 N.E.2d 937.

{¶29} In the case at bar, the state obtained a ruling from the juvenile court judge prior to the beginning of the bindover hearing allowing the state to establish probable cause to believe that EDJ committed the offense almost entirely upon hearsay testimony. Specifically, Alex, his roommate, the neighbor who spoke to two suspicious males in the vicinity and provided surveillance camera video to the police, Gilbert Frazier, III, and Aiyana Tate did not testify and were not subject to cross-examination during the hearing. Rather, the court permitted Detective Jarad Harper to testify, over objection, what each witness told him.

{¶30} At the time EDJ's brief was filed in this case, the Ohio Supreme Court was reviewing the issue of whether juvenile offenders have a state and federal due process right to cross-examine witnesses whose hearsay statements are presented to provide

probable cause for mandatory transfer to adult court. *State v. Fuell*, 164 Ohio St.3d 1419, 2021-Ohio-2923, 172 N.E.3d 1042. However, subsequent to oral arguments in that case, the Ohio Supreme Court dismissed the case as having been improvidently accepted. *State v. Fuell,* Slip Op. No. 2021-0794, *Judgement Entry*, filed May 17, 2022.

### The procedures applicable to adult felony cases

{¶31} Many of the authorities cited by the respective parties in this case analogize a bind over hearing in juvenile court with a preliminary hearing in adult court. [Appellant's brief at 10; Appellee's brief at 6].

{¶32} Preliminary hearings in adult felony cases are governed by Crim. R. 5, which states, in relevant part,

B) Preliminary Hearing in Felony Cases; Procedure.

(1) In felony cases a defendant is entitled to a preliminary hearing unless waived in writing. If the defendant waives preliminary hearing, the judge or magistrate shall forthwith order the defendant bound over to the court of common pleas. Except upon good cause shown, any misdemeanor, other than a minor misdemeanor, arising from the same act or transaction involving a felony shall be bound over or transferred with the felony case. If the defendant does not waive the preliminary hearing, the judge or magistrate shall schedule a preliminary hearing within a reasonable time, but in any event no later than ten consecutive days following arrest or service of summons if the defendant is in custody and not later than fifteen consecutive days following arrest or service of summons if the defendant is not in custody. *The preliminary hearing shall not be held, however, if the*

*defendant is indicted.* With the consent of the defendant and upon a showing of good cause, taking into account the public interest in the prompt disposition of criminal cases, time limits specified in this division may be extended. In the absence of such consent by the defendant, time limits may be extended only as required by law, or upon a showing that extraordinary circumstances exist and that delay is indispensable to the interests of justice.

(2) At the preliminary hearing the prosecuting attorney may state orally the case for the state, and shall then proceed to examine witnesses and introduce exhibits for the state. *The defendant and the judge or magistrate have full right of cross-examination,* and the defendant has the right of inspection of exhibits prior to their introduction. *The hearing shall be conducted under the rules of evidence prevailing in criminal trials generally.*

(3) At the conclusion of the presentation of the state's case, defendant may move for discharge for failure of proof, and may offer evidence on the defendant's own behalf....

(4) Upon conclusion of all the evidence and the statement, if any, of the accused, the court shall do one of the following:

(a) Find that there is probable cause to believe the crime alleged or another felony has been committed and that the defendant committed it, and bind the defendant over to the court of common pleas of the county or any other county in which venue appears.

(b) Find that there is probable cause to believe that a misdemeanor was committed and that the defendant committed it, and retain the case for trial or order the defendant to appear for trial before an appropriate court.

(c) Order the accused discharged.

(d) Except upon good cause shown, any misdemeanor, other than a minor misdemeanor, arising from the same act or transaction involving a felony shall be bound over or transferred with the felony case.

(5) Any finding requiring the accused to stand trial on any charge shall be based solely on the presence of substantial credible evidence thereof. *No appeal shall lie from such decision and the discharge of defendant shall not be a bar to further prosecution.*

\* \* \*

Emphasis added.

**{¶33}** Crim.R.5 (B)(2) expressly provides that the Rules of Evidence apply to preliminary hearings[4]. This is a departure from the rules governing federal procedure in preliminary hearings; the evidentiary rules are expressly inapplicable to preliminary examinations in federal criminal cases, except as to privilege. *See* Fed.Evid.R. 1101(d)(3). *See also* Staff Note to former Fed.R.Crim.P. 5.1(a) (since the rules of evidence are explicitly inapplicable to preliminary hearings, Crim.R. 5.1 need no longer specifically explain, "probable cause may be based upon hearsay evidence in whole or in

---

[4] The Ohio Supreme Court's holding that the constitutional right to confront one's accusers "relates to the actual trial for the commission of the offense and not to preliminary examination" in *Henderson v. Maxwell,* 176 Ohio St. 187, 188, 198 N.E.2d 456 (1964) was decided before the adoption of the Ohio Rules of Criminal Procedure, originally effective July 1, 1973. *See, e.g. State v. Barner,* 5th Dist. Muskingum No. CA-85-15, 1986 WL 4616 (Apr 16, 1986).

part"). *See, In the Matter of: B.W.,* 7th Dist. Mahoning No. 17 MA 0071, 2017-Ohio-9220, 103 N.E.3d 266, ¶42.

**{¶34}** Furthermore, a finding of probable cause by the court conducting the preliminary hearing is not appealable. Crim.R. 5(B)(5).

**{¶35}** There is no constitutional right to a preliminary hearing, and, when an indictment is returned by a grand jury, a hearing is no longer required. *State v. Morris,* 42 Ohio St.2d 307, 326, 329 N.E.2d 85(1975); Crim.R. 5(B).

**{¶36}** The state contends, and many of the cited authorities agree, that the United States Supreme Court has "explained '[t]he right to confrontation is basically a trial right.' *Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). The *Barber* Court went [on] to explain, '[a] preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial.'" [Appellee's brief at 4]. However, *Barber* did not address the right to confrontation or the admission of hearsay evidence in a preliminary or probable cause hearing.

**{¶37}** In *Barber,* Woods gave incriminating testimony against Barber at Barber's preliminary hearing. 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255. Barber's attorney waived his cross-examination of Woods.

**{¶38}** When Barber's case went to trial, Woods was in prison in another state some 225 miles from the trial court. Id. at 720. The state offered the transcript of Woods's preliminary hearing arguing Woods was unavailable. Barber objected arguing that his right to confront his accusers would be undermined. Id. at 720-721. The trial court

overruled the objection. The transcript of Woods's preliminary hearing testimony was read into evidence and Barber was subsequently found guilty.

{¶39} The United States Supreme Court framed the issue,

The question presented is whether petitioner was deprived of his Sixth and Fourteenth Amendment right to be confronted with the witnesses against him at his trial in Oklahoma for armed robbery, at which the principal evidence against him consisted of the reading of a transcript of the preliminary hearing testimony of a witness who at the time of trial was incarcerated in a federal prison in Texas.

Id. at 720. The *Barber* court observed,

It is true that there has traditionally been an exception to the confrontation requirement where a witness is unavailable *and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant.* E.g., *Mattox v. United States, supra* (witnesses who testified in original trial died prior to the second trial). This exception has been explained as arising from necessity and has been justified on the ground that the right of cross-examination initially afforded provides substantial compliance with the purposes behind the confrontation requirement. See 5 Wigmore, Evidence ss 1395—1396, 1402 (3d ed. 1940); C. McCormick, Evidence ss 231, 234 (1954).

390 U.S. at 722, 88 S.Ct. 1318, 20 L.Ed.2d 255 (emphasis added). However, the Court found the state made no effort to procure Woods attendance at trial,

In short, a witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial. The State made no such effort here, and, so far as this record reveals, the sole reason why Woods was not present to testify in person was because the State did not attempt to seek his presence. The right of confrontation may not be dispensed with so lightly.

Id. at 724-725. Clearly, the *Barber* Court addressed the issue of a defendant's right to confrontation *at trial*,

While there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demand of the confrontation clause where the witness is shown to be actually unavailable, this is not, as we have pointed out, such a case.

*Barber, 390 U.S.* at 725-726 (footnote omitted). As Justice Brennan explained,

In *Barber* we stated that *confrontation at a preliminary hearing cannot compensate for the absence of confrontation at trial,* because the nature and objectives of the two proceedings differ significantly. In that case, the prosecution argued that the accused had waived his right to cross-examination at the preliminary hearing. Though we rejected that argument, to put beyond doubt the necessity for confrontation at trial, we stated: 'Moreover, we would reach the same result on the facts of this case had petitioner's counsel actually cross-examined (the witness) at the preliminary hearing. * * * The right to confrontation is basically a trial right. It includes

both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness. A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial.' Id., at 725, 88 S.Ct., at 1322.7 We applied *Barber* retroactively in *Berger v. California*, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969), a case in which defense counsel did have an opportunity to cross-examine the witness at the preliminary hearing. We held, nonetheless, that '(c)learly, petitioner's inability to cross-examine * * * at trial may have had a significant effect on the 'integrity of the fact-finding process." Id., at 315, 89 S.Ct. at 541.

*California v. Green,* 399 U.S. 149, 195-196, 90 S.Ct. 1930, 26 L.Ed.2d 489 (Brennan, J. dissenting) (emphasis added). In other words, cross-examination at the preliminary hearing rarely approximates that at trial, because the two serve different purposes. *Green,* 399 U.S. at 197-198.

{¶40} *Barber* does not support the proposition that a defendant has no right to confront and cross-examine his accusers during a preliminary hearing, or that probable cause may be based upon hearsay. It simply holds that confrontation at a preliminary hearing is not a substitute for confrontation at trial when there is no showing the witness is not available to testify at trial.

{¶41} A preliminary hearing is a critical stage of the criminal process during which a defendant's fundamental right to counsel is protected by the Sixth and Fourteenth Amendments to the United States Constitution. *Coleman v. Alabama,* 399 U.S. 1, 90

S.Ct. 1999, 26 L.Ed.2d 387(1970); *State v. Spates,* 64 Ohio St.3d 269, 595 N.E.2d 351, paragraph one of the syllabus.  In *Coleman*, the Court explained that under Alabama law,

> The sole purposes of a preliminary hearing are to determine whether there is sufficient evidence against the accused to warrant presenting his case to the grand jury and, if so, to fix bail if the offense is bailable.  44 Ala.App., at 433, 211 So.2d, at 920.

399 U.S. at 8, 90 S.Ct. 1999, 26 L.Ed.2d 387.  The Court explained the important role an attorney plays at such preliminary probable cause hearings,

> First, the lawyer's *skilled examination and cross-examination of witnesses* may expose fatal weaknesses in the State's case that may lead the magistrate to refuse to bind the accused over.  Second, in any event, the *skilled interrogation of witnesses* by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial.  Third, trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at the trial.  Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail.

399 U.S. at 9, 90 S.Ct. 1999, 26 L.Ed.2d 387 (emphasis added).

**{¶42}**  After the preliminary hearing is concluded, if the court finds probable cause, the case is sent to the grand jury.

**The Grand Jury**

{¶43} In *Kaley v. United States,* the Court addressed a defendant's ability to challenge an indictment based upon the reliability or competence of the evidence presented to the grand jury,

This Court has often recognized the grand jury's singular role in finding the probable cause necessary to initiate a prosecution for a serious crime. *See, e.g., Costello v. United States*, 350 U.S. 359, 362, 76 S.Ct. 406, 100 L.Ed. 397 (1956). "[A]n indictment 'fair upon its face,' and returned by a 'properly constituted grand jury,' " we have explained, "conclusively determines the existence of probable cause" to believe the defendant perpetrated the offense alleged. *Gerstein v. Pugh*, 420 U.S. 103, 117, n. 19, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (*quoting Ex parte United States*, 287 U.S. 241, 250, 53 S.Ct. 129, 77 L.Ed. 283 (1932)). And "conclusively" has meant, case in and case out, just that. We have found no "authority for looking into and revising the judgment of the grand jury upon the evidence, for the purpose of determining whether or not the finding was founded upon sufficient proof." *Costello*, 350 U.S., at 362–363, 76 S.Ct. 406 (*quoting United States v. Reed*, 27 F.Cas. 727, 738 (No. 16,134) (C.C.N.D.N.Y.1852) (Nelson, J.)). To the contrary, "the whole history of the grand jury institution" demonstrates that "a challenge to the reliability or competence of the evidence" supporting a grand jury's finding of probable cause "will not be heard." *United States v. Williams*, 504 U.S. 36, 54, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992) (*quoting Costello*, 350 U.S., at 364, 76

S.Ct. 406, and *Bank of Nova Scotia v. United States*, 487 U.S. 250, 261,

108 S.Ct. 2369, 101 L.Ed.2d 228 (1988)).  The grand jury gets to say—

without any review, oversight, or second-guessing—whether probable

cause exists to think that a person committed a crime.

571 U.S. 320, 328, 134 S.Ct. 1090, 188 L.Ed.2d 46(2014).

**{¶44}** The Rules of Evidence do not apply to grand jury proceedings.  Evid.R.

101(D)(2); *State v. Brown,* 38 Ohio St.3d 305, 308, 528 N.E.2d 523(1988).  Hearsay is

admissible in grand jury proceedings.  Id.  Furthermore, it is generally accepted that an

indictment by the grand jury renders any defects in the preliminary hearing moot *Dowell*

*v. Maxwell,* 174 Ohio St. 289, 290-291, 189 N.E.2d 95(1963); *State v. Davis*, 5th Dist.

Richland No. 2019 CA 0112, 2020-Ohio-3617,  ¶ 16 c*iting State v. Washington*, 30 Ohio

App.3d 98, 99, 506 N.E.2d 1203 (8th Dist. 1986) and *Styer v. Bricta,* 69 Ohio App.3d 738,

591 N.E.2d 1255 (6th Dist. 1990); *See also*, *State v. Lichtenwalter,* 5th Dist. Guernsey

Nos. 20CA000013, 20CA000023, 2021-Ohio-1794, ¶32. Further, Crim. R. 5 prohibits an

appeal from the probable cause finding.

**{¶45}** Thus, if this case originated as an adult criminal proceeding, EDJ would not

be entitled to challenge a probable cause finding made after a preliminary hearing or after

an indictment is returned by the grand jury.

**Juvenile Court Proceedings**

**{¶46}** The Juvenile Rules "prescribe the procedure to be followed in all juvenile

courts of this state in all proceedings coming within the jurisdiction of such courts" (with

listed exceptions).  Juv.R. 1(A).  The juvenile rule providing for a pre-transfer preliminary

bindover hearing, Juv.R. 30(A), does not contain Crim.R. 5(B)(2)'s incorporation of the evidentiary rules in probable cause hearings.

{¶47} The right to confrontation is applicable to proceedings in juvenile court. While not addressing the issue of probable cause hearings, the United States Supreme Court has stated, "absent a valid confession, a determination of delinquency and an order of commitment to a state institution cannot be sustained in the absence of sworn testimony subjected to the opportunity for cross-examination in accordance with our law and constitutional requirements." *In re Gault,* 387 U.S. 1, 57, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)*, overruled on other grounds by Allen v. Illinois, 478 U.S. 364, 372-73, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986).* In other words, the right to confrontation is applicable to *adjudicatory* hearings held in juvenile court.

{¶48} Because of the "tremendous consequences" following a decision that a child must lose the protections of the juvenile system and face trial as an adult, a bindover proceeding — a "critically important" stage in juvenile proceedings — must "measure up to the essentials of due process and fair treatment." *Kent v. United States*, 383 U.S. 541, 553-554, 556, 560-562, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) (There must be "procedural regularity" in a bindover proceeding "sufficient in the particular circumstances to satisfy the basic requirements of due process and fairness."); *see also In re D.M.,* 140 Ohio St.3d 309, 2014-Ohio-3628, 18 N.E.3d 404, ¶ 11. Moreover, the child's right to counsel is required by Juv.R. 3, which provides that *a child may not waive the right to be represented by counsel at a transfer hearing conducted pursuant to Juv.R. 30. State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, ¶ 36.

{¶49} Juvenile bindover hearings differ from preliminary hearings in several important respects. First, the state may not seek a direct indictment against a juvenile in the event the court finds no probable cause to transfer the case. Additionally, the evidence presented during the bindover hearing must support a finding of probable cause that the juvenile committed an offense for which bindover is either mandated or discretionary. If the evidence supports only a charge that falls outside the permissible cases, then bindover is not appropriate. Finally, a preliminary hearing is not constitutionally mandated; however a juvenile transfer hearing is a prerequisite that must be held in order for the adult court to acquire jurisdiction to proceed with the juvenile case. *State v. Smith,* Slip Op. No. 2019-1813, 2022-Ohio-274, ¶41; 44 (Feb 3, 2022).

**The case at bar**

{¶50} EDJ did confront and cross-examine the witnesses that the state presented at the bindover hearing. Although he is not required to do so, nothing prevented EDJ from calling witnesses or presenting evidence on his own behalf to dispute the issue of probable cause. EDJ did present evidence to suggest another individual was the shooter and that the shooting did not occur during an attempted theft offense. However, he argues in this case, in essence, that he could not be bound over absent the testimony of the victim. [Appellant's brief at 11].

{¶51} We must first point out somewhat of an anomaly. EDJ did not have just one probable cause determination. In the case at bar, after the juvenile court found probable cause to transfer EDJ's case, the Licking County Grand Jury returned an Indictment against EDJ for one count of aggravated robbery with a firearm specification. [Docket Entry No. 7]. Thus, it would appear that a second finding of probable cause to believe

EDJ committed the offense was made by the grand jury. As previously explained the return of an indictment ordinarily renders any defects in the preliminary hearing moot.

**{¶52}** However, "[a] finding of probable cause is a jurisdictional prerequisite under R.C. 2152.12 to transferring a child to adult court for prosecution of an act charged." *State v. Smith,* Slip Op. No. 2019-1813, 2022-Ohio-274, ¶44 (Feb 3, 2022). "Where a juvenile court purports to transfer a juvenile case to adult court without having complied with the proper procedures in R.C. 2152.12, the adult court proceeds in the absence of subject-matter jurisdiction, and any judgment entered by the adult court is a nullity and void ab initio." *State v. J.T.S.,* 10th Dist. No. 14AP-516, 2015-Ohio-1103, 2015 WL 1303097, ¶ 11; *See also*, *State v. Kitchen*, 5th Dist. Ashland No. 02CA056, 2003-Ohio-5017, ¶ 80 (holding, after guilty plea in adult court, that juvenile court did not err in "finding of probable cause to believe appellant committed both offenses alleged" and therefore finding juvenile "court's relinquishment of jurisdiction proper pursuant to R.C. 2152.12").

**{¶53}** Thus, it appears even after the grand jury returned an indictment against EDJ, and even after EDJ pled guilty to the offense, EDJ can argue on appeal that the juvenile court violated his right to confrontation by not requiring the victim to testify during the probable cause hearing.

**{¶54}** It is abundantly clear that a bindover hearing is not an adjudicatory hearing. This distinction is important. As the Court in *Breed v. Jones* observed,

> A requirement that transfer hearings be held prior to adjudicatory hearings affects not at all the nature of the latter proceedings. More significantly, such a requirement need not affect the quality of decision-making at transfer hearings themselves. In *Kent v. United States*, 383

U.S., at 562, 86 S.Ct. at 1057, the Court held that hearings under the statute there involved 'must measure up to the essentials of due process and fair treatment.' *However, the Court has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court.* We require only that, whatever the relevant criteria, and whatever the evidence demanded, a State determine whether it wants to treat a juvenile within the juvenile-court system before entering upon a proceeding that may result in an adjudication that he has violated a criminal law and in a substantial deprivation of liberty, rather than subject him to the expense, delay, strain, and embarrassment of two such proceedings.

421 U.S. 519, 538, 95 S.Ct. 1779, 44 L.Ed.2d 346(1975)(emphasis added). In the corresponding footnote, the court made the following observation,

We note that nothing decided today forecloses States from requiring, as a prerequisite to the transfer of a juvenile, substantial evidence that he committed the offense charged, *so long as the showing required is not made in an adjudicatory proceeding.* See Collins v. Loisel, 262 U.S. 426, 429, 43 S.Ct. 618, 625, 67 L.Ed. 1062 (1923); *Serfass v. United States*, 420 U.S. 377, 391—392, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1972). *The instant case is not one in which the judicial determination was simply a finding of, e.g., probable cause. Rather, it was an adjudication that respondent had violated a criminal statute.*

Id. at n. 18 (emphasis added).

**{¶55}** The requirements for a finding of probable cause to transfer a juvenile's case do not demand the same strictness as proof of the juvenile's guilt. Courts have declined to extend the right to confront witnesses to other pre- and post-trial proceedings that do not concern the adjudication of a defendant's guilt or innocence. *See, United States v. Campbell,* 743 F.3d 802, 808 (11th Cir. 2014) (citing cases); *United States v. Harris*, 458 F.2d 670, 677–78 (5th Cir.), *cert. denied*, 409 U.S. 888, 93 S.Ct. 195, 34 L.Ed.2d 145 (1972) (Consequently, the sixth amendment does not provide a confrontation right at a preliminary hearing).

**{¶56}** The Ohio Rules of Evidence do not apply in a juvenile mandatory bindover proceeding. *In the Matter of B.W.*, 7th Dist. Mahoning No. 17 MA 0071, 2017-Ohio-9220, ¶ 47. In fact, courts that have addressed this or similar questions, have all determined that there is no constitutionally prescribed confrontation right at these types of hearings. *State v. Fuell,* 12th Dist. Clermont No. CA2020-02-008, 2021-Ohio-1627, 172 N.E.3d 1065; *State v. Garner,* 6th Dist. Lucas No. L-18-1269, 2020-Ohio-4939, ¶ 27 (citing *B.W.*); *see State v. Burns,* 8th Dist. Cuyahoga No. 108468, 2020- Ohio-3966, ¶¶ 74-75 (otherwise inadmissible evidence admissible at mandatory bindover hearing) (quoting *State v. Starling,* 2d Dist. Clark No. 2018-CA34, 2019-Ohio-1478); *State v. Whisenant*, 127 Ohio App.3d 75, 85, 711 N.E.2d 1016 (11th Dist. 1998) (otherwise inadmissible evidence admissible at mandatory bindover hearing); *State v. LaRosa*, 11th Dist. Trumbull No. 2018-T-0097, 2020-Ohio-160, ¶ 38 (citing *Whisenant).*

**{¶57}** We cannot escape the fact that had EDJ wanted to confront his accusers he could have done so at trial and been afforded a thorough, probing cross-examination, much greater than he would be afforded when the only issue to be decided is whether

there is probable cause to believe he committed the offense.  If the trier of fact were to find EDJ not guilty, then EDJ would not be subject to the jurisdiction of even the juvenile court.  In the event that EDJ were convicted of an offense that would not have permitted mandatory transfer, or would have permitted only a discretionary transfer, then the case would be returned to juvenile court to proceed pursuant to R.C. 2151.121(B).  *See, e.g., State v. Hollie,* 12th Dist. Butler Nos. CA2021-03-025, CA2021-04-33, 2022-Ohio-872, ¶38; *State v. Ferguson,* 2nd Dist. Montgomery No. 27032, 2017-Ohio-7930, 98 N.E.3d 987, ¶83.

**{¶58}** EDJ's juvenile transfer hearing was non-adjudicatory, as it did not result in any conclusive factual findings that could be used against him at a subsequent trial.  The purpose instead was to determine EDJ's age at the time of the alleged incident and the existence of probable cause.  R.C. 2152.12(A)(1)(a)(i).

**{¶59}** Based upon the foregoing analysis, we hold that the federal and state Confrontation Clauses were inapplicable at EDJ's mandatory transfer hearing.  *State v. Fuell,* 12th Dist. Clermont No. CA2020-02-008, 2021-Ohio-1627, 172 N.E.3d 1065, ¶47.

**{¶60}** EDJ's First Assignment of Error is overruled.

II.

**{¶61}** In his Second Assignment of Error, EDJ contends there was no probable cause to believe he committed the offense of Aggravated Robbery and that he did so with a firearm as required for the firearm specification.  Specifically, EDJ argues evidence was introduced to demonstrate that another suspect was the shooter, not EDJ, and that the victim was shot because of where he was from and not in furtherance of a theft.  As a

result, there was no probable cause to believe that EDJ committed aggravated robbery with a firearm.  [Appellant's brief at 13].

**Standard of Appellate Review**

{¶62}  In a bind-over hearing, "the state must provide credible evidence of every element of an offense to support a finding that probable cause exists to believe that the juvenile committed the offense before ordering mandatory waiver of juvenile court jurisdiction pursuant to R.C. 2151.26(B) [now  R.C. 2152.12(A)(1)(a)]. * * * In meeting this standard the state must produce evidence that raises more than a mere suspicion of guilt, but need not provide evidence proving guilt beyond a reasonable doubt." *State v. Iacona*, 93 Ohio St.3d 83, 93, 2001-Ohio-1292, 752 N.E.2d 937.  In determining the existence of probable cause, the juvenile court must evaluate the quality of the evidence presented by the state in support of probable cause as well as any evidence presented by the respondent that attacks probable cause.  Id., *citing  Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).  Determination of the merits of the competing prosecution and defense theories, both of which [are] credible, ultimately [is] a matter for the factfinder at trial.   Id. at 96.  *Accord, State v. Culbertson*, 5th Dist. Stark No. 2018CA00183, 2020-Ohio-903, ¶60.

{¶63}  "[A] juvenile court's probable-cause determination in a mandatory-bindover proceeding involves questions of both fact and law, and thus, [the reviewing court] defer[s] to the trial court's determinations regarding witness credibility, but ... review[s] de novo the legal conclusion whether the state presented sufficient evidence to demonstrate probable cause to believe that the juvenile committed the acts charged." *In re A.J.S.,* 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶51.

Issue for appellate review: *Whether the state provided credible evidence of every element of the offense that supported a finding that probable cause exists to believe that EDJ committed the offense of aggravated robbery with a firearm.*

**{¶64}** R.C. 2911.01 Aggravated Robbery provides, in relevant part,

(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;

* * *

**{¶65}** R.C. 2929.23 provides,

(A) "Deadly weapon" means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon.

(B)(1) "Firearm" means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. "Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.

**{¶66}** In *State ex rel. Portage Lakes Edn. Assn., OEA/NEA v. State Emp. Relations Bd.*, 95 Ohio St.3d 533, 2002-Ohio-2839, 769 N.E.2d 853, ¶ 37, the Court observed,

"Probable cause" is normally referred to in the context of the commission of a crime and it is defined as "[a] reasonable ground to suspect that a person has committed or is committing a crime." Black's Law Dictionary (7th Ed.1999) 1219; see, also, Webster's Third New Internatl. Dictionary (1971) 1806, defining "probable cause" as "a reasonable ground for supposing that a criminal charge is well-founded."

**{¶67}** As Justice Cook has noted,

[P]robable cause" is a term of art. As early as 1813, the United States Supreme Court noted that "the term 'probable cause' * * * has a fixed and well known meaning." *Locke v. United States* (1813), 11 U.S. (7 Cranch) 339, 348, 3 L.Ed. 364, 367. A finding of probable cause requires more than a mere suspicion of guilt but less evidence than that required to sustain a conviction. *See Brinegar v. United States* (1949), 338 U.S. 160, 175, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879, 1890. *See, also, Melanowski v. Judy* (1921), 102 Ohio St. 153, 156, 131 N.E. 360, 361, *citing Ash v. Marlow* (1851), 20 Ohio 119, 1851 WL 16, paragraph one of the syllabus (defining probable cause as "[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged"). More recently, we stated that probable cause is "a term that has been defined as '"a reasonable ground for belief of guilt."'" *State v. Moore* (2000), 90 Ohio St.3d 47, 49, 734 N.E.2d 804, 807, *quoting*

Carroll v. United States (1925), 267 U.S. 132, 161, 45 S.Ct. 280, 288, 69

L.Ed. 543, 555.

State v. Scott, 92 Ohio St.3d 1, 8, 748 N.E.2d 11(2001) (Cook, J., concurring).

{¶68} In the case at bar, the state presented evidence through Detective Harper that the victim stated he was told to "run his pockets" and then was shot. The victim identified EDJ as the person who shot him. EDJ's cellphone was also recovered. PC.T. at 58. On the cellphone was the application "Snapchat" and it was signed in under EDJ's account. A feature of Snapchat is that it monitors and keeps records regarding the location of the account holder. Detective Harper testified that this location data is recorded by the longitudinal and latitudinal location. Detective Harper testified that the records for EDJ's Snapchat account were obtained and revealed that at 3:04 pm, EDJ was within the margin of error 120 feet of 2 Pleasant Street. PC.T. at 63. Detectives spoke to Ms. Tate and she identified EDJ as one of the persons she was with in the car on February 22, 2021 on the day of the shooting. PC.T. at 58. Surveillance video was obtained showing two suspects fleeing the area in a blue car. Detective Harper testified that Ms. Shaffer, one of the 9-1-1 callers, told police that someone she only knew as "E.J." had shot Alex.

{¶69} Viewing the evidence, we conclude that a reasonable person could have found a reasonable ground for belief that EDJ had committed the crime of aggravated robbery with a firearm specification.

{¶70} EDJ did present evidence that a second suspect was named as the shooter and Alex may have told officers he did not know who had shot him. Further evidence was introduced that Alex did not tell one of the officers that he was asked to "run his pockets"

prior to being shot.   Nevertheless, the state met its burden to establish probable cause by presenting evidence raising more than a mere suspicion that EDJ had committed the crime of aggravated robbery with a firearm specification.   "Pursuant to *Iacona*, the resolution of the conflicting theories of the evidence, both of which were credible, is a matter for the trier of fact at a trial on the merits of the case, not a matter for exercise of judicial discretion at a bind-over hearing in the juvenile court." *In re A.J.S.,* 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶64.

**{¶71}**  EDJ's Second Assignment of Error is overruled.

**{¶72}**  The judgment of the Licking County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Wise, John, J., concur