[Cite as *In re K.B.*, 2023-Ohio-1644.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|                |   |              |          |
|----------------|---|--------------|----------|
| IN RE: K.B.    | : | APPEAL NOS.  | C-220463 |
|                |   |              | C-220464 |
|                | : |              | C-220465 |
|                |   | TRIAL NOS.   | 22-1360X |
|                |   |              | 22-1361X |
|                | : |              | 22-1362X |
|                |   |              |          |
|                | : | *O P I N I O N.* |      |

Appeals From: Hamilton County Juvenile Court

Judgments Appealed From Are: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: May 17, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Keith Sauter*, Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*Raymond T. Faller,* Hamilton County Public Defender, and *Jessica Moss*, Assistant Public Defender, for Defendant-Appellee.

CROUSE, **Presiding Judge.**

{¶1}    Plaintiff-appellant state of Ohio appeals from the Hamilton County Juvenile Court's judgments finding no probable cause to believe that defendant-appellee K.B. committed acts that would constitute felonies if committed by an adult. For the following reasons, we reverse the judgments of the juvenile court.

## I. Factual and Procedural History

{¶2}    In April 2022, the state filed two sets of complaints against K.B. alleging that he was involved in two different shootings and associated robberies in the Fairmont neighborhood of Cincinnati, Ohio, in April and May 2020.

{¶3}    The first set of complaints alleged that in April 2020, K.B. was involved in the shooting of Donald Scott. The second set of complaints alleged that in May 2020, K.B. shot another man, Geray Carter, and stole his car. K.B. was 16 years old at the time of the alleged acts. He was charged with attempted murder under R.C. 2923.02(A), a first-degree felony if committed by an adult; aggravated robbery under R.C. 2911.01, a first-degree felony if committed by an adult, and felonious assault under R.C. 2903.11(A), a second-degree felony if committed by an adult. Each charge was accompanied by possession and facilitation gun specifications.

{¶4}    The state filed motions for relinquishment of jurisdiction to transfer the cases to the Hamilton County Court of Common Pleas under Juv.R. 30(A). In August 2022, the court held a mandatory-bindover hearing to determine whether probable cause existed to believe that K.B. had committed the acts alleged by the state in both the Scott and Carter cases. Detective Joe Coombs testified for the state. Carter was subpoenaed to testify, but did not appear at the proceeding.

{¶5} Coombs testified that he was a district investigator at the time of the two shootings and had been since 2005. He was called in early the night of the Scott shooting to take Scott's statement and to process the crime scene. Coombs testified that Scott told him he saw three people on the street the night he was shot, but that only two approached his vehicle. Scott told Coombs that he was in the neighborhood to "buy something," and was subsequently robbed and shot in the neck. In an effort to get away, Scott crashed his car. A neighbor later provided surveillance video footage that corroborated Scott's version of the events. Coombs testified that the case went cold for a few months after his conversation with Scott. Scott later died from his injuries.

{¶6} One month later, in the same neighborhood, Carter was shot, and his car was stolen. Coombs met with Carter shortly after he was released from the hospital to discuss both offenses, though their conversation focused on the Scott case. Coombs testified that Carter was "visibly wounded. He was walking with a cane. His hand was bandaged." Carter told Coombs that he had nothing to do with the Scott shooting, but he admitted that he was down the street when he witnessed K.B. and Antonio Smith "[]talking with Mr. Scott at the car, and then he heard the gunshot and saw the car crash." According to Carter, he had been with K.B. and Smith earlier that night. Coombs testified that Carter claimed he had known them for approximately one year, and that he knew where K.B. lived.

{¶7} Carter identified K.B. and Smith as his assailants based on his personal familiarity with them and through photos. Coombs testified that, according to Carter, K.B. shot him in the back, and Smith shot him in the hand and stomach when he refused to give them his car. Coombs described the events as follows:

3

He was car jacked. Basically they wanted his car. They were friends of his, but he said that they took his car. He refused to give it up. That's when they put him at gunpoint and put him in the backseat, eventually shot him after they drove away. From where they initially got him at, they shot him a short time later. And this all occurred in the same Fairmont neighborhood, Montrose and Baltimore, in pretty close proximity to one another.

{¶8} Coombs testified that police fingerprinted the car and received a hit on Smith. The state did not produce any evidence of the firearms used in the commission of this offense.

{¶9} Coombs later met with Smith, who admitted to his role in the Scott shooting. Smith identified K.B. as the other individual in the surveillance video and told Coombs that he knew Carter. Smith admitted to using a .32-caliber semi-automatic firearm—consistent with the evidence at the scene. Shell casings from another weapon were also found, suggesting the involvement of two shooters. Smith did not admit to his involvement in the Carter shooting.

{¶10} At the conclusion of the hearing, the court found that there was probable cause to believe K.B. had committed the acts alleged in the Scott case, and was subject to mandatory bindover on those offenses. However, without providing its rationale, the court found there was not probable cause to believe K.B. committed the acts as alleged against Carter.

{¶11} The state timely appealed.

## II. Law and Analysis

**{¶12}** In its sole assignment of error, the state argues that it presented sufficient credible evidence to demonstrate probable cause that K.B. committed the acts as charged. In response, K.B. points to the lack of evidence corroborating Coombs's testimony.

**{¶13}** A "mandatory-bindover proceeding presents mixed issues of law and fact * * *." *In re A.J.S.,* 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 1. We review the juvenile court's findings of fact and credibility determinations for an abuse of discretion, but we review its conclusions of law—such as the existence of probable cause—de novo. *Id.* at ¶ 1, 47.

**{¶14}** At a mandatory-bindover hearing, "[t]he state must provide credible evidence of every element of an offense to support a finding that probable cause exists to believe that the juvenile committed the offense * * *." *State v. Iacona*, 93 Ohio St.3d 83, 752 N.E.2d 937 (2001), paragraph three of the syllabus. The state's evidence must " 'raise[] more than a mere suspicion of guilt, but *need not* provide evidence proving guilt beyond a reasonable doubt.' " (Emphasis sic.) *In re A.J.S.* at ¶ 42, quoting *Iacona* at 93. "[T]he state has no burden to disprove alternate theories of the case at a bindover proceeding." *Id.* at ¶ 61, citing *Iacona* at 96. Similarly, neither party needs to present its entire case. *State v. Martin*, Slip Opinion No. 2022-Ohio-4175, ¶ 30.

**{¶15}** Likewise, the juvenile court's role in these proceedings is that of a "gatekeeper," as it must evaluate whether sufficient credible evidence exists to warrant the juvenile being bound over. *A.J.S.* at ¶ 46. As a gatekeeper, the court "does not sit as the ultimate trier of fact." *Martin* at ¶ 31. Instead, it "evaluate[s] the quality of the state's evidence and any evidence that attacks probable cause." *In re R.Z.,* 1st Dist.

5

Hamilton No. C-210660, 2022-Ohio-3630, ¶ 26, citing *Iacona* at 93. But, "the resolution of the conflicting theories of the evidence, both of which were credible, is a matter for the trier of fact at a trial on the merits of the case * * *." *A.J.S.* at ¶ 64.

{¶16} To establish probable cause for attempted murder, the state must provide credible evidence that K.B. "purposely or knowingly * * * engage[d] in conduct that, if successful, would constitute or result in" the death of another. *See* R.C. 2923.02; R.C. 2903.02(A). *See, e.g., In re Moore,* 1st Dist. Hamilton Nos. C-090576, C-090577 and C-090578, 2010-Ohio-3991, ¶ 23-27 (finding probable cause for attempted murder where defendant "stood five feet away from [the victim] when he pointed a gun directly at his chest and fired it").

{¶17} To establish probable cause for aggravated robbery, credible evidence must show that K.B. "in attempting or committing a theft offense" displayed, brandished, indicated that he possessed, or used a deadly weapon; or inflicted serious physical harm. R.C. 2911.01(A). *See, e.g., State v. Amos,* 1st Dist. Hamilton No. C-150265, 2016-Ohio-1319, ¶ 35 (finding probable cause for aggravated robbery where defendant's accomplice attempted to steal an undercover police officer's vehicle by pointing a gun at his head); *State v. Dell*, 2022-Ohio-2483, 192 N.E.3d 1288, ¶ 68-70 (5th Dist.) (finding probable cause for aggravated robbery with a firearm specification where detective testified that a witness and victim told police they were shot by the defendant, paired with a photo identification and other evidence).

{¶18} To establish probable cause for felonious assault, credible evidence must demonstrate that K.B. knowingly caused or attempted to cause physical harm to

Carter by means of a deadly weapon. R.C. 2903.11(A)(2).[1] *See, e.g., State v. Garner,* 6th Dist. Lucas No. L-18-1269, 2020-Ohio-4939, ¶ 32 (finding probable cause for felonious assault and murder, with firearm specifications, where evidence established defendant shot two victims while standing on his front porch, injuring one and killing another).

{¶19} To establish probable cause for the possession and facilitation firearm specifications, credible evidence must show that K.B. had a firearm on or about his person or under his control while committing the offenses, R.C. 2941.141, and that he displayed, brandished, indicated that he possessed, or used the firearm to facilitate the offenses. R.C. 2941.145.

{¶20} In this case, the juvenile court did not explain how it concluded that probable cause was lacking. For instance, had the juvenile court based its decision on issues of credibility, we would defer to that determination absent an abuse of discretion. On this record though, and without the benefit of the trial court's credibility findings, we see no reason to doubt the veracity of Coombs's testimony or the veracity of those witnesses informing his statements. Thus, on appeal, the issue we must determine is whether that evidence is sufficient to establish probable cause.

{¶21} Through the testimony of Coombs, the undisputed evidence presented at the bindover hearing established that K.B., armed with a firearm, took Carter's vehicle from him, before shooting him in the back moments later. Carter sustained serious injury, requiring medical attention and the use of a cane. Smith's fingerprints on Carter's vehicle corroborates this evidence, given the established link between K.B.

---

[1] The state's complaint does not distinguish between R.C. 2903.11(A)(1) and (A)(2), though the trial transcript and attendant firearm specifications suggest that R.C. 2903.11(A)(2) was the intended statute. Nonetheless, the state contends that the evidence supports both sections, and we agree.

and Smith, and the similarities in each shooting. *See State v. Griffin*, 13 Ohio App.3d 376, 377, 469 N.E.2d 1329 (1st Dist.1979) (explaining that "circumstantial evidence has no less value" than other evidence). This is sufficient to establish probable cause that K.B., in committing a theft offense, purposely shot Carter, which caused him physical harm.

{¶22} K.B. posits that the lack of physical evidence tying him to the scene supports the juvenile court's conclusion that probable cause was lacking. Yet, courts have consistently held that physical evidence is not required in a probable-cause setting because "[t]he state [is] not required to present evidence of guilt beyond a reasonable doubt." *In re R.N.,* 6th Dist. Lucas No. L-17-1301, 2018-Ohio-5006, ¶ 17 (finding probable cause for attempted murder with a firearm specification where the victim testified that the defendant shot him, but where the state failed to produce shell casings or fingerprint evidence).

{¶23} K.B. contends that another issue with the state's case is that it failed to produce evidence supporting Carter's photo identification of him. While we acknowledge the record is not clear with respect to how the photo identification came about, we see no reason to doubt the veracity of Carter's statements to Coombs based on his personal relationship with K.B. Courts have held similar identifications were sufficient for probable-cause purposes. *See State v. Hughes*, 10th Dist. Franklin No. 18AP-837, 2019-Ohio-4590, ¶ 7-11 (affirming trial court's finding that eyewitness provided credible evidence of identification where eyewitness spent time with defendant socially on several occasions and saw him commit the crime charged).

{¶24} In short: the existence of any evidence disputing K.B.'s role in the shooting does not negate a probable cause finding. *See In re R.N.* at ¶ 17, citing *Iacona*,

93 Ohio St.3d at 96, 752 N.E.2d 937. The gaps in the state's evidence will be for the factfinder to sort through at trial, not the juvenile court in a bindover hearing.

{¶25} Thus, we hold that this evidence is sufficient to establish probable cause that K.B. committed attempted murder, aggravated robbery, and felonious assault with firearm specifications.

### *III. Conclusion*

{¶26} Appellant's sole assignment of error is sustained. The judgments of the juvenile court are reversed, and the cause is remanded for the entry of an appropriate bindover order consistent with the law and this opinion.

Judgments reversed and cause remanded.

**WINKLER** and **KINSLEY JJ.,** concur.


Please note:

The court has recorded its entry on the date of the release of this opinion.