Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/19/2025 09:12 AM CDT

**In re Interest of Aaden S., a child
under 18 years of age.
State of Nebraska, appellee, v.
Aaden S., appellant.**

___ N.W.3d ___

Filed August 12, 2025.    No. A-24-947.

1. **Courts: Juvenile Courts: Jurisdiction: Appeal and Error.** An appellate court reviews a juvenile court's decision to transfer a juvenile offender's case to county court or district court de novo on the record for an abuse of discretion.

2. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

3. **Courts: Juvenile Courts: Jurisdiction: Words and Phrases: Appeal and Error.** In reviewing a trial court's ruling on a transfer motion, an appellate court's function is not to review the record de novo to determine whether the case should be transferred. Instead, an appellate court's review is limited to determining whether the trial court's reasons and rulings are clearly untenable. To be untenable is to be incapable of being defended.

4. **Appeal and Error.** Alleged errors of the lower court must be both specifically assigned and specifically argued in the brief of the party asserting the errors to be considered by an appellate court.

5. **Constitutional Law: Juvenile Courts.** The heightened standards of the Confrontation Clause do not apply in juvenile proceedings.

6. **Constitutional Law: Trial.** The right to confrontation is basically a trial right.

7. **Courts: Juvenile Courts.** A juvenile transfer hearing is not a trial as it does not find as a fact that the accused minor is guilty of the offense charged.

- 778 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

8. **Courts: Juvenile Courts: Proof.** The purpose of a juvenile transfer hearing is to determine whether a preponderance of the evidence supports transferring the proceeding to the county court or district court.

9. **Courts: Juvenile Courts: Rules of Evidence.** The customary rules of evidence do not apply at juvenile transfer hearings.

10. **Constitutional Law: Due Process: Juvenile Courts.** Because the Confrontation Clause is largely inapplicable in juvenile court proceedings, the proper analysis is whether the juvenile's due process rights were violated.

11. **Constitutional Law: Due Process.** The U.S. and Nebraska Constitutions provide that no person shall be deprived of life, liberty, or property without due process of law.

12. **Due Process.** Due process does not guarantee an individual any particular form of state procedure.

13. ____. Due process is flexible and calls for such procedural protections as the particular situation demands.

14. **Due Process: Words and Phrases.** While the concept of due process defies precise definition, it embodies and requires fundamental fairness, and its clear central meaning is that parties whose rights are to be affected are entitled to be heard.

15. **Due Process: Notice.** Due process requires that parties at risk of the deprivation of liberty interests be provided adequate notice and an opportunity to be heard, which are appropriate to the nature of the proceeding and the character of the rights that might be affected.

16. **Due Process: Courts: Juvenile Courts.** For juvenile transfer hearings, due process requires a hearing be held where the juvenile is represented by counsel and a decision issued by the court sufficient to permit a meaningful review if appealed.

17. **Courts: Juvenile Courts: Prosecuting Attorneys.** When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, the county attorney may move to transfer the matter from juvenile court to county or district court.

18. **Courts: Juvenile Courts: Jurisdiction.** When the prosecution seeks to transfer a juvenile offender's case to criminal court, the juvenile court must retain the matter unless a preponderance of the evidence shows that the proceeding should be transferred to the county court or district court. The prosecution has the burden by a preponderance of the evidence to show why such proceeding should be transferred.

19. ____: ____: ____. In determining whether a case should be transferred to criminal court, a juvenile court should consider the factors set forth in Neb. Rev. Stat. § 43-276 (Cum. Supp. 2024). In order to transfer the proceedings, the court need not resolve every factor against the juvenile,

- 779 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor. Rather, it is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile.

20. **Courts: Juvenile Courts: Jurisdiction: Proof.** Because it is the State's burden to prove that a sound basis exists for retaining a case in the district court, any factor found not to favor retention should be considered a factor that favors transfer to the juvenile court.

21. **Courts: Expert Witnesses.** Trial courts are not obligated to accept an expert witness' testimony. If they so decide, trial courts may reject an expert's testimony.

Appeal from the County Court for Buffalo County: John P. Rademacher, Judge. Affirmed.

Charles D. Brewster, of Klein, Brewster, Brandt & Messersmith, for appellant.

Marti S. Sleister, Deputy Buffalo County Attorney, for appellee.

Riedmann, Chief Judge, and Pirtle and Arterburn, Judges.

Pirtle, Judge.

## I. INTRODUCTION

Aaden S. was charged in the county court for Buffalo County, sitting as a juvenile court, with several felonies and a misdemeanor related to the alleged assault and sexual assault of J.Z., his then-girlfriend. Following a motion by the State, the court transferred the matter to the adult docket of the county court.

Aaden now appeals the transfer and assigns several errors related to the procedure utilized during his transfer hearing. For the reasons that follow, we affirm.

## II. BACKGROUND

Aaden was 16 years old on September 18, 2024, when he was charged by a juvenile petition with (1) first degree

- 780 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

sexual assault, a Class II felony; (2) terroristic threats, a Class IIIA felony; (3) assault by strangulation or suffocation, a Class IIIA felony; and (4) third degree domestic assault, a Class I misdemeanor. These charges stem from two incidents that occurred in August 2024. Both incidents involved inter-actions between Aaden and J.Z., who was 18 years old at the time. On September 4, J.Z. took part in a Family Advocacy Network (FAN) interview. During the interview, she reported the following events.

On August 17, 2024, she and Aaden were at a friend's house drinking alcohol when he got upset with her. She stated that he pushed her against a wall by her neck and spit in her face. They then moved to a bedroom where they continued to fight. In this bedroom, J.Z. was sitting on the bed with Aaden kneeling in front of her. She alleged that when he stood up, his head hit her chin, which caused her lip to bleed. After they left the bedroom, Aaden continued to yell at J.Z. and told her to not tell anyone at the party about what had happened. They continued to fight throughout the evening before head-ing home.

Aaden got more upset after J.Z. told him that she should drive because he had consumed four shots of whiskey. After arguing further, he hit her in the back of the head three times. J.Z. then sat in the backseat, which prompted Aaden to say, "[G]et into the 'fucking passenger seat.'" Once she did so, he hit her in the head while they were driving away. Aaden then started driving erratically, which prompted J.Z. to sit on the floor because she was afraid. Seeing this, Aaden kept telling her to sit in the seat or he would crash the car.

When they were almost to Aaden's house, Aaden asked J.Z. "why she was a whore," and hit her several more times in the head and once across the face. Once they got to Aaden's house, J.Z. told him she was going home, but he told her that she was staying. Aaden then forced her out of the car by her neck, which impacted her ability to breathe. Once she was able to get free, she tried running away, but Aaden pulled

- 781 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

her hair and punched her in the face. J.Z. tried getting away again, but Aaden caught her, punched her in the face, dragged her by her hair, and told her to get inside. J.Z. stated that she tried running away around six or seven more times, with similar results. During one of these attempts, J.Z. got away and thought she saw a police officer, but Aaden tackled her and threatened to kill her if she got back up. To keep her quiet, Aaden grabbed the area of her bicep that he knew contained her birth control device and would cause her pain if he grabbed it harshly.

They then went to a park where Aaden punched J.Z. in the face again. J.Z. started screaming because she thought he broke her nose, so Aaden hit her in the face another time and covered her mouth with his hand. Aaden then started crying and said he did not want to be like his father and apologized. They walked back to Aaden's house, and J.Z. once again tried to run away but Aaden tackled her. J.Z. believed this made her lose consciousness. When she awoke, Aaden told her she could leave but would not return her keys or phone. He also told her it was going to be a "long walk home." Aaden then told her to get inside his house. They proceeded to go into the garage, but J.Z. attempted to flee again. After Aaden stopped her, they argued outside the garage.

Eventually, J.Z. was able to use her "Ring doorbell" to see that "[t]here were guys at her house," which angered Aaden. He then pushed J.Z. up against the garage door. J.Z. tried to run away again, but Aaden grabbed her and told her to go inside. J.Z. said that Aaden was being "really scary," so she listened and went in the house. Once inside, they went to Aaden's room and J.Z. started to clean the blood off her face. At this point, she noticed bruises were starting to form on her neck.

Aaden then told J.Z. to get into his bed, but she told him that she was going to sleep alone. Aaden then forced her onto his bed and took off her clothes. He tried to have sex with her, but she told him that she did not want to. After Aaden started kissing her, she told him again that she did not want to have

- 782 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

sex. Despite this, he penetrated her vagina with his fingers. Because she wanted him "to stop," J.Z. agreed to have sex. The next day, Aaden would not return J.Z.'s keys or let her leave his house despite her requests. He eventually allowed her to leave around 3 p.m.

The next incident occurred 8 days later on August 25, 2024, when J.Z. and Aaden were at Aaden's house. Aaden had been drinking alcohol when he asked J.Z. to take her clothes off and lay next to him, which she did. They soon began fighting, and Aaden asked her if she wanted to have sex. She said no, but Aaden pulled his penis out and asked for oral sex. J.Z. refused. Aaden then told her that she had to either perform oral sex on him or have sex with him. After more arguing and refusals by J.Z., she started to perform oral sex on him but soon stopped because she was tired. He then asked her to have sex again, which she refused. Despite this refusal, he positioned her on her stomach and penetrated her vagina with his penis. J.Z. repeatedly told him to stop and moved into positions where he could not penetrate her. However, Aaden moved her back into a different position each time. This occurred around five times. At some point, J.Z. started to cry, but Aaden continued anyway. And although he asked her multiple times if she was all right, and she told him no each time, he continued to have sex with her.

Afterward, J.Z. tried to put her clothes on, but Aaden did not let her. When she attempted to put on her underwear, he tried to rip it off. This led to a physical fight where Aaden tried to choke J.Z. Because of this, she started screaming and Aaden covered her mouth with his hand. Aaden's father heard the noise and asked what was going on. It was only at this point that Aaden let J.Z. leave. But as J.Z. left the house, Aaden pushed her, followed her to her car, and once she was in the car, spat in her face.

On September 18, 2024, the State motioned to transfer Aaden's case to the adult county court. A hearing was held on November 14. At the hearing, the State offered exhibits

- 783 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

4 through 19 without calling any witnesses. These exhibits included photographs of J.Z.'s injuries, text messages between J.Z. and Aaden, the video recording of J.Z.'s FAN interview, and the police reports that outlined J.Z.'s allegations. Aaden's attorney objected to this evidence, arguing that it was offered without any attempt to authenticate it. He also asserted that because it was not being offered through witness testimony, it violated Aaden's rights of confrontation and due process. The court overruled these objections and received the exhibits into evidence. Notably, the State did not call any witnesses throughout the proceeding.

Aaden then called his juvenile probation officer, Tyler Mertens, as a witness. He stated that he became involved with Aaden when he was 16 years old because of Aaden's current charges. He explained that Aaden was originally sent to a detention center for juveniles but was discharged after 3 weeks with no negative reports. This indicated to Mertens that Aaden was able to follow the rules, cooperate with staff, and did not have problems with peers. He also stated that Aaden was attending out-patient counseling, regularly attending school, and participating in weekly drug tests. Although his first drug test was positive for "THC," his subsequent tests were all negative. Mertens then discussed how this was Aaden's first time in juvenile court and how he did not have a criminal history outside of some traffic infractions. He also stated that Aaden was complying with the no-contact order with J.Z. and was employed. Given Aaden's lack of criminal history and his participation in relevant services, as well as the fact he was being electronically monitored, Mertens believed that Aaden could succeed on probation.

One of the exhibits received into evidence was Aaden's substance abuse assessment. This document showed that Aaden started smoking marijuana when he was 14 years old and began drinking alcohol more consistently when he turned 16 years old. It also explained that he was previously diagnosed with major depressive disorder and anxiety. The

- 784 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

assessment further diagnosed him with cannabis use disorder, alcohol use disorder, nicotine dependence, and ADHD, combined type.

On December 10, 2024, the juvenile court issued an order granting the State's motion to transfer. The court generally found the case should be transferred to adult court because the crimes involved substantial violence for the purposes of sexual gratification and Aaden would have less than 2 years under the juvenile court's jurisdiction for rehabilitation. The court further found that Aaden posed a risk to public safety, attempted to manipulate J.Z. from contacting the police, had tried to contact J.Z. after the charges were filed, and engaged in adult activities such as drinking alcohol.

Aaden now appeals.

### III. ASSIGNMENTS OF ERROR

Aaden assigns, restated, that (1) the juvenile court abused its discretion by granting the State's motion to transfer, (2) the juvenile court violated his rights to due process by receiving the State's evidence over his objections, (3) the transfer hearing was conducted in a manner that violated his rights to confrontation and due process, (4) his rights to confrontation and due process were violated by the rules of evidence not applying at the transfer hearing, (5) the State failed to show by a preponderance of the evidence that his case should be transferred to the county court, (6) the juvenile court violated his rights to confrontation and due process by receiving evidence without requiring the State to call any witnesses, and (7) the juvenile court erred in failing to properly consider his best interests before transferring his case to county court.

### IV. STANDARD OF REVIEW

[1,2] An appellate court reviews a juvenile court's decision to transfer a juvenile offender's case to county court or district court de novo on the record for an abuse of discretion. *In re Interest of Steven S.*, 299 Neb. 447, 908 N.W.2d 391 (2018).

- 785 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Aldana Cardenas*, 314 Neb. 544, 990 N.W.2d 915 (2023).

## V. ANALYSIS

We first note that since Aaden filed his appeal and oral argument was had in this matter, the Nebraska Supreme Court issued an opinion in *State v. Jeremiah T.*, 319 Neb. 133, 21 N.W.3d 313 (2025). That case involved a juvenile's motion to transfer his case from adult court to juvenile court. After the district court denied the motion, the juvenile appealed and we reversed the district court's decision. On further review, the Supreme Court reversed our decision and remanded the cause with directions to affirm the district court's denial of the motion to transfer.

[3] In its opinion, the Supreme Court clarified the appropriate standard of review for motions to transfer. It stated:

Abuse of discretion is a highly deferential standard of review. It is the standard applicable to reviewing a criminal sentence, where we have explained that "[i]t is not the function of an appellate court to conduct a de novo review of the record to determine whether a sentence is appropriate" and that "[t]he standard is not what sentence we would have imposed." Likewise, in reviewing a trial court's ruling on a transfer motion, an appellate court's function is not to review the record de novo to determine whether we think the case should be transferred. Here, the Court of Appeals articulated reasons why it would have transferred the matter to juvenile court. But an appellate court's review is limited to determining whether the trial court's reasons and rulings are clearly untenable. To be "untenable" is to be "incapable of being defended."

*Id.* at 151-52, 21 N.W.3d at 327.

- 786 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

### 1. Consolidation of Assignments

[4] While Aaden's appellate brief contains seven assignments of error, his argument section is divided into only four parts. Alleged errors of the lower court must be both specifically assigned and specifically argued in the brief of the party asserting the errors to be considered by an appellate court. *State v. Goynes*, 318 Neb. 413, 16 N.W.3d 373 (2025). Aaden's first argument section seems to take issue with the court's finding that Aaden's actions were violent and asserts that his rights were violated when he was denied the opportunity to cross-examine evidence of his purported violence. The second section takes issue with how the court weighed the various factors under Neb. Rev. Stat. § 43-276(1) (Cum. Supp. 2024). The third section concerns the purported violation of his rights to confrontation and due process. Lastly, the fourth section asserts that we cannot rely on the juvenile court's assessment of credibility because the State did not present any witnesses for the court to evaluate.

In comparing Aaden's assignments and arguments, we believe his first and third arguments collectively argue his second, third, and sixth assignments of error. Similarly, we believe his second argument argues both his first and fifth assignments of error. However, his fourth argument is not assigned, and none of his arguments correspond to his fourth or seventh assignments of error.

Therefore, we consolidate Aaden's second, third, and sixth assignments of error to assign that the juvenile court violated his rights to confrontation and due process by receiving evidence without requiring the State to call any witnesses. We also consolidate his first and fifth assignments of error to assign that the juvenile court abused its discretion in determining that his case should be transferred to the adult docket of the county court. And because they do not comply with our rules of appellate practice, we do not address his fourth and seventh assignments of error, as well as the fourth section of his argument.

- 787 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

## 2. Rights to Confrontation and Due Process

Aaden assigns that the juvenile court violated his rights to confrontation and due process by receiving evidence without requiring the State to call any witnesses.

[5-10] We first note that because this was a juvenile proceeding, which is civil in nature, and not a criminal case, the heightened standards of the Confrontation Clause are not applicable. *In re Interest of Brian B. et al.*, 268 Neb. 870, 689 N.W.2d 184 (2004). The U.S. Supreme Court has explained that "[t]he right to confrontation is basically a trial right." *Barber v. Page*, 390 U.S. 719, 725, 88 S. Ct. 1318, 20 L. Ed. 2d 255 (1968). A juvenile transfer hearing is not a trial as it does not find as a fact that the accused minor is guilty of the offense charged. See Neb. Rev. Stat. § 43-274(5)(a) (Cum. Supp. 2024). Instead, the purpose of the hearing is to determine whether a preponderance of the evidence supports transferring the proceeding to the county court or district court. *Id.* In other words, it is more akin to a hearing on a motion to change venue. The hearing must be held within 15 days of the motion being filed and "[t]he customary rules of evidence shall not be followed at such hearing." Neb. Rev. Stat. § 29-1816(3)(a) (Cum. Supp. 2024). Because the Confrontation Clause is largely inapplicable in juvenile court proceedings, the Supreme Court has stated that in such cases the proper analysis is whether the juvenile's due process rights were violated. *In re Interest of Brian B. et al., supra.*

[11-15] The U.S. and Nebraska Constitutions provide that no person shall be deprived of life, liberty, or property without due process of law. *In re Interest of Jordon B.*, 316 Neb. 974, 7 N.W.3d 894 (2024). Due process does not guarantee an individual any particular form of state procedure. *Id.* It is flexible and calls for such procedural protections as the particular situation demands. *Id.* While the concept of due process defies precise definition, it embodies and requires "'fundamental fairness,'" and its clear central meaning is that "'[p]arties

- 788 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

whose rights are to be affected are entitled to be heard.'" *Id.* at 987, 7 N.W.3d at 904. Broadly speaking, due process requires that parties at risk of the deprivation of liberty interests be provided adequate notice and an opportunity to be heard, which are appropriate to the nature of the proceeding and the character of the rights that might be affected. *Id.*

The U.S. Supreme Court has previously addressed the due process requirements for transferring juvenile proceedings to adult court. In *Kent v. United States*, 383 U.S. 541, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966), the juvenile court of the District of Columbia waived jurisdiction over a juvenile to the U.S. District Court for the District of Columbia. In making this decision, the juvenile court did not hold any hearings and did not confer with the juvenile, the juvenile's parents, or the juvenile's counsel. Nor did the court make any findings or provide any reason for the waiver of jurisdiction. The U.S. Supreme Court articulated that while the District of Columbia's Juvenile Court Act provided the juvenile court with "considerable latitude within which to determine whether it should retain jurisdiction over a child," *id.*, 383 U.S. at 552-53, the statute "assume[d] procedural regularity sufficient in the particular circumstances to satisfy the basic requirements of due process and fairness," *id.*, 383 U.S. at 553.

[16] The U.S. Supreme Court then highlighted three essential elements that juvenile transfer proceedings must include to satisfy due process. First, it articulated that a hearing must be held. While this hearing may be informal and need not "conform with all of the requirements of a criminal trial or even of the usual administrative hearing, [it] must measure up to the essentials of due process and fair treatment." *Id.*, 383 U.S. at 562. A critical component to that fair treatment is the requirement that the juvenile be represented by counsel at the hearing. The Court articulated that this right to representation is not a mere formality. *Kent, supra.* Instead, the juvenile's counsel must be "given an opportunity to function." *Id.*, 383 U.S. at 561. Lastly, the juvenile court must issue a decision in

- 789 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

which it states its reasoning for the transfer. *Id., supra*. The Court stated that this decision does not need to be "formal or . . . necessarily include conventional findings of fact," but it must contain sufficient specificity to permit meaningful review. *Id*. See, also, *State v. Tyler P.*, 299 Neb. 959, 970, 911 N.W.2d 260, 268 (2018) (describing how Nebraska courts in transfer proceedings must "make a statement of its findings which provides sufficient specificity to permit meaningful [appellate] review").

In our review of relevant Nebraska case law, we did not find any case where the Supreme Court or Court of Appeals considered the adequacy of the *Kent* due process requirements in juvenile transfer proceedings. However, other jurisdictions that have considered this issue have largely declined to afford juveniles greater due process protections than those required under *Kent*. More specifically, Ohio, Michigan, Iowa, Minnesota, and Idaho have all refused to extend the right of confrontation to juvenile transfer proceedings. See, *State v. Dell*, 2022 Ohio 2483, 192 N.E.3d 1288 (Ohio App. 2022); *People v. Hana*, 443 Mich. 202, 504 N.W.2d 166 (1993); *State v. Wright*, 456 N.W.2d 661 (Iowa 1990); *Matter of Welfare of T. D. S.*, 289 N.W.2d 137 (Minn. 1980); *Wolf v. State*, 99 Idaho 476, 583 P.2d 1011 (1978). The only jurisdiction we could find that chose to extend the constitutional right of confrontation to such proceedings was Indiana. See *Summers v. State*, 248 Ind. 551, 230 N.E.2d 320 (1967).

While the dissent points to several other jurisdictions that recognize a right of confrontation in juvenile transfer proceedings, each of those jurisdictions has done so through statute or by court rule. If Nebraska had enacted a similar statute or court rule, there would be no need to reach the constitutional question. But because Nebraska has not codified such a right, any protection must arise, if at all, from the federal or state constitution.

The dissent also asserts that we have failed "to identify any case in which our appellate courts have addressed and

- 790 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

condoned a transfer from juvenile court to adult court based solely upon exhibits offered by counsel without any identification or authentication or supporting witness." We acknowledge that while our appellate courts have not addressed this issue directly, this is not the first time the State has utilized this procedure. In *State v. Jeremiah T.*, 319 Neb. 133, 21 N.W.3d 313 (2025), the State's evidence wholly consisted of written documents, surveillance video, and recordings of the defendant and alleged victim. Although that case involved a motion to transfer from adult court to juvenile court, the State did not attempt to authenticate its evidence, nor did it call any supporting witnesses. While this issue was not raised on appeal, we note the Supreme Court did not comment on the practice utilized by the State or engage in a plain error review.

While we agree that the approach utilized by the State may not be the best practice in terms of creating a clear and complete record for both the trial court and an appellate court on review, we do not find that Aaden's right to due process was violated by the State's decision to introduce its evidence without calling any witnesses. Despite the approach utilized by the State, the transfer hearing still met all of the requirements set forth in *Kent v. United States, supra*, to satisfy Aaden's right to due process. The juvenile court conducted a hearing, Aaden was represented by counsel at that hearing, and the juvenile court issued a reasoned opinion in which it explained in sufficient detail its decision for transferring Aaden's case to adult court. The dissent points out that counsel for Aaden had no ability to cross-examine the State's witnesses, thus impeding counsel's ability to function. However, we note that counsel was not prevented from calling any individual named in the police reports or portrayed in the photographs or video received by the court. While the burden is on the State, the forum of a transfer hearing is not a trial and the rules of evidence do not apply. Thus, if the State wishes to run the risk of not meeting its burden of proof by failing to call witnesses, the defense is not left without recourse. It has the ability to

- 791 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

call the necessary witnesses it needs to contest the evidence adduced by the State. Here, Aaden chose not to contest the State's evidence in that manner. Accordingly, we determine that Aaden's right to due process was not violated.

### 3. TRANSFER TO COUNTY COURT

Aaden next assigns that the juvenile court abused its discretion in determining that his case should be transferred to the adult docket of the county court.

Neb. Rev. Stat. § 43-246.01(3) (Cum. Supp. 2024) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who (1) are 11 years of age or older and commit a traffic offense that is not a felony or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. See § 29-1816. Actions against these juveniles may be initiated either in the juvenile court or in the county or district court. § 43-246.01(3). In the present case, the first degree sexual assault allegation, which is a Class II felony, put Aaden within this category of juvenile offenders.

[17,18] When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, the county attorney may move to transfer the matter from juvenile court to county or district court. § 43-274(5)(a). When the prosecution seeks to transfer a juvenile offender's case to criminal court, the juvenile court must retain the matter unless a preponderance of the evidence shows that the proceeding should be transferred to the county court or district court. *In re Interest of William E.*, 29 Neb. App. 44, 950 N.W.2d 392 (2020). The prosecution has the burden by a preponderance of the evidence to show why such proceeding should be transferred.

[19] Section 43-276(1) sets forth 15 factors for a juvenile court to consider in making the determination of whether to transfer a case to county court or district court. *In re Interest of Steven S.*, 299 Neb. 447, 908 N.W.2d 391 (2018). These factors include:

- 792 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim or juvenile agree to participate in restorative justice; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

§ 43-276. The court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor. *In re Interest of Steven S., supra.* Rather, it is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile. *Id.*

(a) Factors Weighing in Favor of Transfer

Of the 15 statutory factors, most weigh in favor of transfer. First, and most notably, Aaden's crimes involved exceptional

- 793 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

and repeated violence. Throughout both incidents, it is alleged that he grabbed J.Z. by the neck to the point where she could not breathe, hit her on the back of the head multiple times, slapped her, spat in her face at least twice, and punched her in the face repeatedly. When she attempted to escape numerous times, Aaden recurrently tackled her and dragged her back by her hair. On one of those occasions, she lost consciousness after being tackled. More so, Aaden threatened to crash his car when J.Z. did not listen to him and later threatened to kill her if she tried to get a police officer's attention.

Aaden's actions also involved repeated sexual abuse. Although J.Z. repeatedly told him that she did not want to have sex, he digitally penetrated her, forced her to perform oral sex on him under threat of being vaginally penetrated, and later vaginally penetrated her with his penis multiple times. While he had sex with J.Z. against her wishes, she repeatedly asked him to stop, attempted to put herself in positions where he could not penetrate her, and told him that she was not all right. However, despite these requests and her crying, each time Aaden repositioned her and continued the penetration. And once the sexual abuse ended and J.Z. tried to get dressed, Aaden attempted to rip off her underwear and choked her. Given this overwhelming display of violence, this factor weighs heavily in favor of transfer.

Aaden's actions were clearly motivated by a desire for sexual gratification and control. Because he was willing to use extraordinary violence to achieve this, he poses a clear risk to the public. Therefore, the factors relating to his motivation and whether he poses a public safety risk also weigh heavily in favor of transferring his case.

Aaden was 16 years 10 months old when these events occurred. By the time the juvenile court issued its order, Aaden was 17 years 2 months old. At his age, Aaden should have understood the seriousness of his repeated physical and sexual abuse. He also demonstrated an ability to appreciate the wrongfulness of his actions when he took a moment to

- 794 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

apologize to J.Z. on the night of August 17, 2024, and told her that he did not want to be like his father. But despite this moment of clarity, he soon continued beating, threatening, and abusing her. He also demonstrated a recognition of the seriousness of his actions and an understanding of the possible legal ramifications when he berated J.Z. over text messages for cooperating with law enforcement. Accordingly, the factors involving Aaden's age and his ability to appreciate the seriousness of his conduct also weigh heavily in favor of transfer.

Given the repeated, violent, and impulsive nature of Aaden's actions, we are not confident he will be able to rehabilitate himself in the less than 2 years remaining before he reaches the age of majority. As such, the factor pertaining to whether the security of the public may require Aaden to continue in secure detention or under supervision for a period extending beyond his minority also weighs in favor of transferring his case.

Aaden is currently prohibited from contacting J.Z., and she has refused his contacts. Because of this, the factor relating to whether the victim or juvenile agreed to participate in restorative justice also weighs in favor of transfer.

Lastly, as articulated by the juvenile court, Aaden considers himself to be an adult and capable of making adult decisions. An example of this was his consumption of alcohol during both incidents. With this evidence, we determine the factor that allows for the consideration of other matters as deemed relevant by the parties also weighs in favor of transfer.

### (b) Factors Weighing in Favor of Retention

Several factors weigh against transfer. Aaden's best interests would likely be served by remaining in juvenile court and thereby avoiding several possible felony convictions. He has also proven amenable to treatment while under jurisdiction of the juvenile court. His probation officer testified that he was attending outpatient therapy, going to school, passing his drug tests, and abiding by court orders. Further, except for the current charges and some minor traffic infractions, Aaden does not have a prior criminal history.

- 795 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

[20] There were also some factors for which there was no evidence presented. In *State v. Aldana Cardenas*, 314 Neb. 544, 990 N.W.2d 915 (2023), the Supreme Court found that because it is the State's burden to prove that a sound basis exists for retaining a case in the district court, any factor found not to favor retention should be considered a factor that favors transfer to the juvenile court. There was no evidence that a firearm was involved, nor that Aaden was a member of a criminal street gang. There was also no evidence presented as to whether there was a juvenile pretrial diversion program that Aaden qualified for, nor any evidence as to whether a juvenile court order had been issued for him under Neb. Rev. Stat. § 43-2,106.03 (Reissue 2016). Because no factor can be considered neutral or inapplicable, these factors weigh against transfer.

### (c) Resolution

We determine the juvenile court did not abuse its discretion in transferring Aaden's case to county court. While not determinative, we note that a majority of the factors weigh in favor of transfer. There is no arithmetical computation or formula required in a court's consideration of the statutory criteria or factors. *State v. Esai P.*, 28 Neb. App. 226, 942 N.W.2d 416 (2020). There are no weighted factors, that is, no prescribed method by which more or less weight is assigned to each factor specified by statute. *Id.*

But even if a majority of the factors did not weigh in favor of transfer, the relevant factors—including the violence involved in the crimes, Aaden's motivation, his age at the time of the offense, the risk he poses to public safety, the unlikelihood of full rehabilitation within 2 years, and his ability to appreciate the nature and seriousness of his conduct—collectively weigh heavily enough in favor of transfer to support the juvenile court's decision. While we acknowledge that Aaden has shown some progress under the jurisdiction of the juvenile court, we cannot overlook the significant and overwhelming

- 796 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

violence portrayed in this matter. As demonstrated by his actions, Aaden will continue to pose a significant risk to public safety beyond his minority and will require extended supervision to mitigate that risk. Therefore, we conclude the juvenile court's decision to transfer Aaden's case to county court was not untenable or unreasonable.

The dissent asserts the juvenile court was unable to conduct the required balancing test—by which public protection and societal security are weighed against the practical and non-problematical rehabilitation of the juvenile—because the State failed to present any evidence regarding Aaden's ability to be timely rehabilitated through the juvenile system. But there was substantial evidence that implicitly went toward Aaden's inability to be rehabilitated in under 2 years. At the transfer hearing, the State offered J.Z.'s forensic interview, police reports, and photographs to show that Aaden used extreme violence against J.Z. multiple times, later attempted to convince her to not cooperate with law enforcement, and demonstrated an understanding at the time of the events that his actions were wrong. This evidence, the authenticity of which was not disputed by Aaden or his attorney, in conjunction with the little time Aaden had before aging out of the juvenile court's jurisdiction, was sufficient for the court to conduct the requisite balancing test.

[21] We also acknowledge that although Mertens testified Aaden could be rehabilitated within 2 years, the court was not obligated to accept his opinion. See *State v. Jeremiah T.*, 319 Neb. 133, 21 N.W.3d 313 (2025)*.* In *Jeremiah T.*, the Supreme Court held that the district court could reject the testimony of a forensic psychologist who testified to the defendant's amenability to treatment. Here, the court explicitly considered and rejected the probation officer's opinion, noting that the probation officer had been provided limited information regarding the case at that point in time. We note that in the sentencing scenario, the Supreme Court has long held that a sentencing judge is not bound by the recommendations of a

- 797 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

probation officer in determining a sentence to be imposed. *State v. Johnson*, 240 Neb. 924, 485 N.W.2d 195 (1992); *State v. Stranghoener*, 208 Neb. 598, 304 N.W.2d 679 (1981). We can find no error in the court's decision to reject Mertens' testimony.

We further note that this matter is distinguishable from *In re Interest of William E.*, 29 Neb. App. 44, 950 N.W.2d 392 (2020), which is cited by the dissent. In that case, we held that because the State failed to present any evidence as to whether the juvenile could be rehabilitated, had a prior criminal history, or posed a public safety risk, the juvenile court was unable to balance the risk he posed to public safety against his ability to be rehabilitated.

In addition, we further pointed out:

[The juvenile] argues that the State failed to produce sufficient evidence to meet its burden to show that the case should be transferred to county court. Before addressing the evidence presented by the State and the factors set forth above, we first note that the court made a brief oral pronouncement from the bench following a hearing that lasted only 24 minutes, stating the factors it found to weigh in favor of transferring the case to county court. It then entered the following journal entry: "Court finds that, based on JV43-276, no treatment available and this offense was violent, public safety as well, and old enough to appreciate serious [sic] of the offense."

We also note there were three exhibits offered and received into evidence, but the record does not indicate when the court would have reviewed those exhibits prior to its oral pronouncement at the end of the hearing. The court did not explain in its oral pronouncement or its journal entry why it found certain factors favored transferring the case to county court, nor did it review all the factors.

*Id.* at 50, 950 N.W.2d at 397.

- 798 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

Therefore, we concluded the juvenile court abused its discretion when it granted the State's motion to transfer the case to adult court. But this is not what occurred in the present matter. Here, the State offered evidence to show that Aaden was a public safety risk and would have little time under the jurisdiction of the juvenile court to be rehabilitated. Accordingly, unlike in *In re Interest of William E., supra*, the juvenile court in this case possessed sufficient evidence that allowed it to balance Aaden's amenability for rehabilitation against the risk he posed to the public.

## VI. CONCLUSION

We determine the juvenile court did not violate Aaden's rights to confrontation and due process by allowing the State to introduce evidence without calling any witnesses. We also determine that the court did not abuse its discretion in transferring his case from juvenile court to county court.

AFFIRMED.

RIEDMANN, Chief Judge, dissenting.

The majority concludes that (1) a juvenile's due process rights are not violated when the juvenile's case is transferred to adult court upon mere presentation of unidentified documents and (2) the State meets its burden of proving by a preponderance of the evidence that the proceeding should be transferred to the county court without any evidence that the juvenile is not amenable to services in the juvenile court. Given the stakes involved in transferring this juvenile's case to adult court where he faces potential convictions of a Class II felony and two Class IIIA felonies, carrying decades of possible imprisonment, due process and our juvenile justice system require more. Accordingly, I dissent.

*Purpose of Juvenile Court.*

When addressing its first interlocutory appeal of a transfer from juvenile court to adult court, the Nebraska Supreme Court articulated the purpose of juvenile courts. See *In re*

- 799 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

*Interest of Steven S.*, 299 Neb 447, 908 N.W.2d 391 (2018).
It stated:

> We have long held that the object of the juvenile code
> is corrective, to the end that the child's reformation be
> brought about. And we have observed that a juvenile
> proceeding is not a prosecution for a crime but a spe-
> cial proceeding that serves as an ameliorative alternative
> to a criminal prosecution and that the purpose of our
> statutes relating to youthful offenders is the education,
> treatment, and rehabilitation of the child. Moreover, the
> juvenile code expounds upon these purposes at length
> and the codification of recent changes allocating juris-
> diction between juvenile and adult courts illustrates the
> Legislature's goal of favoring juvenile courts as forums
> for criminal offenses committed by minor children.

*Id*. at 455, 908 N.W.2d at 397.

The U.S. Supreme Court has acknowledged the crucial role
transfer hearings play in juvenile cases. In *Kent v. United
States*, 383 U.S. 541, 560, 86 S. Ct. 1045, 16 L. Ed. 2d 84
(1966), the Court stated, "The determination of whether to
transfer a child from the statutory structure of the Juvenile
Court to the criminal process of the District Court is 'criti-
cally important.'" Since that time, federal and state courts
have recognized the same. See, e.g., *Kemplen v. State of
Maryland*, 428 F.2d 169, 174 (4th Cir. 1970) ("it seems to us
nothing can be more critical to the accused than determining
whether there will be a guilt determining process in an adult-
type criminal trial. The waiver proceeding can result in dire
consequences indeed for the guilty accused. If the juvenile
court decides to keep jurisdiction, he can be detained only
until he reaches majority. . . . But, if jurisdiction is waived
to the adult court, the accused may be incarcerated for much
longer, depending upon the gravity of the offense, and, if
the offense be a felony, lose certain of his rights of citizen-
ship") (emphasis omitted); *R.H. v. State*, 777 P.2d 204, 210
(Alaska App. 1989) ("[n]or can juvenile waiver proceedings

- 800 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

realistically be said to affect 'only the forum where the issue of guilt will be adjudicated.' A juvenile waiver proceeding is the only available avenue by which the state may seek to prosecute a child as an adult. Consequently, the stakes involved in such proceedings are high"); *Ramona R. v. Superior Court*, 37 Cal. 3d 802, 810, 693 P.2d 789, 795, 210 Cal. Rptr. 204, 210 (1985) ("[t]he result of a fitness hearing is not a final adjudication of guilt; but the certification of a juvenile offender to an adult court has been accurately characterized as 'the worst punishment the juvenile system is empowered to inflict'"); *Edwards v. State*, 227 Kan. 723, 725, 608 P.2d 1006, 1009 (1980) ("proceedings to certify a minor to stand trial as an adult were 'comparable in seriousness to a felony prosecution,'" quoting *J. T. P. v. State*, 544 P.2d 1270 (Okla. Crim. App. 1975)).

In *Kent*, the U.S. Supreme Court declined to impose "all of the requirements of a criminal trial or even of the usual administrative hearing," but held that "the hearing must measure up to the essentials of due process and fair treatment." *Id.*, 383 U.S. at 562. It determined that as to counsel's involvement in the proceeding, "it is precisely the role of counsel to 'denigrate'" adverse information provided to the court. *Id.*, 383 U.S. at 563. It expressly rejected the statement of the U.S. Court of Appeals for the District of Columbia Circuit that cross-examination by the juvenile's counsel is "'the kind of adversarial tactics which the system is designed to avoid.'" *Id.*, 383 U.S. at 560. Rather, the Supreme Court rebuked the suggestion that defense counsel's role was limited to bringing forward affirmative information. It concluded that a juvenile's right to counsel is "meaningless—an illusion, a mockery—unless counsel is given an opportunity to function." *Id.*, 383 U.S. at 561.

Keeping in mind the "critically important" role of the juvenile transfer proceeding, I turn now to the method by which the State presented its "evidence." The State adduced no testimony, and although the majority identifies the exhibits offered

- 801 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

by the State to include "photographs of J.Z.'s injuries, text messages between J.Z. and Aaden, [and] the video recording of J.Z.'s FAN interview," no one at the hearing identified them as such. In preliminary statements, the State advised the court, "I have evidence in terms of both photos, the police reports, and the video from the CAC interview." The exhibits were offered and received as merely "Exhibits 4 through 19." Aaden's counsel objected, stating:

[M]y client has the right to due process of law to have some basic things fulfilled before the Court can accept evidence. The first thing that comes to mind is authentication. You know, those photographs up there, other than representations by counsel, we don't know who those photographs are of, who took them, when they were taken, and what they purport to show. So, I make those objections pretty much to all of the evidence that's going to be offered today unless we have a witness that can offer some foundation and authenticate what the exhibits are. I don't know what the number is on the video here, Your Honor, but same thing.

In addition, the Sixth Amendment right to confrontation is not available through a video. And I don't know if the video is self-authenticating or not, but we got to have some due process of law in this hearing, Judge, because of the serious charges that my client's facing. And so we would object for those reasons. . . .

. . . .

I can't cross examine a video. I can't cross examine anything about those photographs or anything else that's up there in your stack of exhibits. So, therein lies the problem.

At no time during the hearing were the exhibits authenticated; no testimony was received to identify the photographs as being of the victim or of the injuries that she allegedly sustained in the altercations. The screenshots do not identify the date, the sender, or the recipient. There is no indication

- 802 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

they include the complete conversations. No author of the police reports was called to testify regarding their preparation. No witness was presented that Aaden's counsel could cross-examine regarding any of these exhibits. "While the Nebraska Evidence Rules do not apply in juvenile proceedings, the basic requirements of due process oblige a court to consider the type of evidence used by the State in order to determine the weight to be given to that evidence." *In re Interest of Aaron D.*, 269 Neb. 249, 262, 691 N.W.2d 164, 174 (2005).

Addressing Aaden's due process argument, the majority focuses solely on the right of a juvenile to confrontation in transfer hearings and cites to five jurisdictions that have "refused to extend the right of confrontation to juvenile transfer proceedings." In all the cases cited, however, the State called witnesses who presented the offending testimony, albeit through hearsay. In *State v. Dell*, 2022 Ohio 2483, 192 N.E.3d 1288 (Ohio App. 2022), extensive testimony was provided by the detective who investigated the offense. The *Dell* court noted that the defendant "did confront and cross-examine the witnesses that the state presented at the bindover hearing." 2022 Ohio at ¶ 50, 192 N.E.3d at 1301. In *People v. Hana*, 443 Mich. 202, 504 N.W.2d 166 (1993), the State elicited testimony from three officers who were involved in the investigation and a probate court psychologist, all of whom were presumably available for cross-examination. In *State v. Wright*, 456 N.W.2d 661 (Iowa 1990), a probation officer conducted an investigation and filed a report as required by statute. He was unavailable at the time of the hearing, and the report was introduced through his supervisor. Rejecting the juvenile's argument that the report was inadmissible hearsay, the Iowa court stated:

> We similarly conclude that under Iowa law a juvenile has no statutory right to confrontation when *reliable* hearsay evidence is offered and accepted. We adopt the safeguards suggested by the American Bar Association standards: hearsay evidence is not objectionable when

- 803 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

there are *indicia of trustworthiness* and when the evidence was not obtained in violation of the juvenile's constitutional rights.

*Id*. at 664 (emphasis supplied). It further noted that the juvenile's counsel "had a right to, and did, cross-examine all the witnesses who testified." *Id*. at 666. Finally, in *Matter of Welfare of T. D. S.*, 289 N.W.2d 137 (Minn. 1980), the law enforcement officers testified and were subject to cross-examination. Noting the requirement of reliability, the court stated: "When hearsay is *reliable and an opportunity to dispute it is afforded*, application of strict exclusionary rules of evidence to reference hearings would impede both the state and the juvenile in fully advising the court of relevant considerations." *Id*. at 140 (emphasis supplied).

The majority also contends that the only jurisdiction which it could find that extended the right to confrontation in juvenile transfer pleadings was Indiana. My research reveals, however, a slew of jurisdictions that not only allow, but mandate, cross-examination by either statute or court rule. See, e.g., Ala. Code § 12-15-202(f)(3) (2012) (providing that, in juvenile transfer hearing, accused "has the right to confront all witnesses against the child, subject to limitations recognized by the United States Supreme Court"). See, also, *A.P.S. v. State*, 378 So. 3d 589 (Ala. Crim. App. 2022). Other jurisdictions mandating cross-examination through statute include, but are not limited to, West Virginia (W. Va. Code Ann. § 49-5-2 (LexisNexis Supp. 2009), providing that juvenile has right to cross-examine witnesses); North Dakota (N.D. Cent. Code § 27-20-27 (2016), providing party is entitled to cross-examine adverse witnesses); and Wyoming (Wyo. Stat. Ann. § 14-6-223(b)(ii) (2013), providing right to cross-examine witnesses at juvenile transfer hearing).

Regardless of whether the Confrontation Clause applies in juvenile transfer proceedings absent statutory enactment, there can be no doubt that due process applies. The majority fails to identify any case in which our appellate courts

- 804 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

have addressed and condoned a transfer from juvenile court to adult court based solely upon exhibits offered by counsel without any identification, authentication, or supporting witness. It cites to a similar procedure used in *State v. Jeremiah T.*, 319 Neb. 133, 21 N.W.3d 313 (2025), and observes that the Nebraska Supreme Court did not "comment" on the practice utilized, nor engage in a plain error review. However, the case was before the Supreme Court on the State's petition for further review, so no due process error was assigned, nor was the procedure of the juvenile court at issue. As stated in *Jeremiah T., supra*, 319 Neb. at 142, 21 N.W.3d at 321, "If further review is granted, the Nebraska Supreme Court will review only the errors assigned in the petition for further review and discussed in the supporting memorandum brief."

Rather than identify a case in which our appellate courts, or any appellate court for that matter, have addressed whether the procedure used in this case complies with due process, the majority has identified only cases in which hearsay was allowed based upon there being some indicia of reliability and a witness who could be cross-examined. Here, no indicia of reliability exists and no witnesses testified. Although Aaden had counsel, he was severely limited in his ability to discredit the exhibits received.

Keeping in mind that it is the State's burden to prove by a preponderance of the evidence that the proceeding should be transferred to the county court, it is not defense counsel's responsibility to call the State's witnesses to lay the proper foundation or impeach improperly admitted evidence, although the majority appears to state otherwise. Rather, defense counsel should be provided the opportunity to cross-examine those persons supplying adverse evidence, or at least have assurances that the evidence upon which the court will rely has some indicia of reliability. Even in hearings for protection orders, which the Nebraska Supreme Court has recognized as possessing a relatively limited intrusion on a party's liberty interests, "due process does impose some basic [procedural]

- 805 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

requirements." *D.W. v. A.G.*, 303 Neb. 42, 49, 926 N.W.2d 651, 657 (2019).

On this record, where the State was allowed to simply offer "Exhibits 4 through 19" without any authentication or foundation, and called no witnesses who could either support or be cross-examined as to these exhibits, I cannot find that the hearing measured up to the essentials of due process and fair treatment as required by *Kent v. United States*, 383 U.S. 541, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966).

*Finding in Favor of Transfer.*

Even assuming the juvenile court properly received the exhibits, I would find it abused its discretion in determining the evidence was sufficient to meet the State's burden, not based upon a reweighing of factors, but, rather, based upon the absence of evidence upon which to weigh Aaden's amenability to treatment. The evidence offered by the State and received by the juvenile court consisted of nine photographs, four text messages, two police reports, and a flash drive containing a video of a "FAN interview." Through the testimony of Aaden's juvenile probation officer, Tyler Mertens, Aaden presented his counseling records. None of the State's evidence provided any information regarding the type of treatment that was available to Aaden through the juvenile court or the type of treatment to which he would be amenable. The juvenile court recognized the absence of such evidence in its order, stating, "The State failed to present any evidence regarding necessary evaluations for a juvenile adjudicated with sexually offending and how long such an evaluation would take to complete. Nor was the Court presented with any evidence regarding the possible nature of treatment and the length of treatment."

Mertens testified to his belief that Aaden could be safely supervised in the community and was not a threat to public safety. He believed that Aaden was amenable to treatment and that juvenile probation could help him. He confirmed

- 806 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

Aaden had no criminal history. The only evidence of prior involvement in the court system was that Aaden successfully completed a diversion program for vaping a few years prior. Aaden expressed a desire to improve himself and acknowledged that the company he keeps is the source of his troubles. The State did not rebut this evidence. The transfer hearing was held in November 2024; Aaden was 17 years 1 month old at the time.

Despite the lack of evidence to rebut Mertens' testimony and Aaden's desire to change, the juvenile court determined that

> less than two years of juvenile rehabilitative services would be an insufficient amount of time to treat and supervise Aaden. Any testimony to the contrary by Probation Officer Mertens is rejected as lacking credibility due to the limited information provided to Probation Officer Mertens to this point in the proceedings.

The limited information assumingly refers to Mertens' testimony that he had not read the police reports; however, he confirmed he was aware that the charges were first degree sexual assault, strangulation, terroristic threats, and domestic assault, all of which he considered "serious charges" and which would involve violence.

Our standard of review is de novo on the record for an abuse of discretion. See *In re Interest of Steven S.*, 299 Neb 447, 908 N.W.2d 391 (2018). And although we apply the rule that when the evidence is in conflict, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other, the evidence here was not in conflict. There was no evidence before the court that Aaden could not be rehabilitated within the remaining 23 months of his minority. To the contrary, it revealed that he had no adverse reports while detained and had been in the community for the preceding 5 weeks without incident. The only witness who testified to Aaden's amenability to treatment was Mertens, and his testimony was favorable to Aaden. Although the juvenile court was not bound by this

- 807 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

testimony (see *State v. Jeremiah T.*, 319 Neb. 133, 21 N.W.3d 313 (2025)), absent this testimony, the juvenile court had no evidence as to Aaden's amenability to treatment. Yet it is precisely his amenability to treatment that the juvenile court is required to weigh against public protection and societal security when ruling upon a motion to transfer. See *id*.

Neb. Rev. Stat. § 43-276 (Cum. Supp. 2024) sets forth 15 factors for a juvenile court to consider in making the determination of whether to transfer a case to county court or district court. The court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor. *Jeremiah T., supra*. Rather, it is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile. *Id*. Here, the court had no adverse evidence regarding the practical and nonproblematical rehabilitation of Aaden because the State failed to adduce any. The juvenile court was free to discredit Mertens' testimony; however, without any evidence, it is unclear how the court was able to perform the balancing test to conclude by a preponderance of the evidence that the proceeding should be transferred to the county court.

It appears, based upon the court's order and as affirmed by the majority, that the seriousness of the crimes allegedly committed was a sufficient basis for the court to determine the proceeding should be transferred to adult court. But unlike some other jurisdictions, Nebraska has not included mandatory transfer offenses into its juvenile transfer statutes. Compare Neb. Rev. Stat. § 43-274 (Cum. Supp. 2024) with Ohio Rev. Code Ann. § 2152.12 (LexisNexis 2007) (mandatory bind-over dependent upon juvenile's age and severity of offense) and Mich. Comp. Laws Ann. § 764.1f (West Cum. Supp. 2025) (same). There is no prescribed formula in Nebraska that requires juveniles of a specific age, who commit certain crimes, to be transferred to adult court, nor do the statutes

- 808 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

create any presumption that a juvenile cannot be timely rehabilitated. See *State v. Leroux*, 26 Neb. App. 76, 913 N.W.2d 903 (2018) (acknowledging § 43-276 does not prevent transfer of homicide charges to juvenile court). Rather, Nebraska requires a judicial determination through a hearing in which the juvenile is entitled to representation. The court must perform a balancing test in which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile. To allow the State to forgo any proof of this latter factor alleviates the burden imposed upon it by statute.

In *Jeremiah T., supra*, 319 Neb. at 151, 21 N.W.3d. at 327, the Nebraska Supreme Court emphasized the "highly deferential standard of review" required under an abuse of discretion standard to determine the district court did not err in weighing the factors of § 43-276. Here, however, my concern is not how the factors were weighed, but, rather, the absence of evidence of the factors against which public protection can be weighed. See *In re Interest of William E.*, 29 Neb. App. 44, 950 N.W.2d 392 (2020) (reversing transfer from juvenile court to county court in part due to absence of evidence of amenability or that juvenile could not be rehabilitated in remaining 15 months of juvenile court jurisdiction). When a district court's decision is *supported by appropriate evidence*, it cannot be said the court abused its discretion in its transfer decision. See *Jeremiah T., supra*. Conversely, an abuse of discretion exists when appropriate evidence to support the decision is not adduced. Based on the absence of evidence to support a finding that Aaden cannot be timely rehabilitated through the juvenile system, the juvenile court could not conduct the required balancing test. Therefore, I would find that the juvenile court abused its discretion in granting the State's motion to transfer.

As we determined in *In re Interest of William E., supra*, 29 Neb. App. at 55, 950 N.W.2d at 400:

- 809 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
IN RE INTEREST OF AADEN S.
Cite as 33 Neb. App. 777

[T]here was insufficient evidence for the juvenile court to properly weigh [the juvenile's] practical and nonproblematical rehabilitation under the juvenile court's jurisdiction against those factors favoring transfer to adult court in the interest of public safety and protection. Absent such evidence and consideration, we must conclude the juvenile court abused its discretion in granting the transfer of the case to county court.

Accordingly, I would reverse the juvenile court's order and remand the cause for further proceedings in the juvenile court.